RYAN v. UNITED STATES.

DUNCAN v. UNITED STATES.

Nos. 10652, 10653.

United States Court of Appeals
District of Columbia Circuit.

Argued June 13, 1951.

Decided July 26, 1951.

and Harold H. Bacon, Asst. U. S. Attys., were on the brief, for appellee.

Before CLARK, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

■ The appellants George A. Duncan and Edward Ryan, Jr., in a joint trial by jury were found guilty of robbery. They moved for a new trial because of conversations of the prosecuting attorney with several members of the jury during recesses in the trial. They asserted they were thus prejudiced and the jury was prevented from rendering an impartial verdict.[1] The trial judge held a hearing on the motions. Several jurors and other witnesses were examined and cross-examined. The evidence shows that such conversations did occur between the prosecuting attorney and some members of the jury. This raised a presumption of prejudice. We so conclude from the discussion in Mattox v. United States, 1892, 146 U.S. 140, 147–150, 13 S.Ct. 50, 53, 36 L.Ed. 97, where it is said:

"Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear."

See, to similar effect, Sunderland v. United States, 8 Cir., 1927, 19 F.2d 202, 212, involving conversations between a juror and a witness; United States v. Sorcey, 7 Cir., 1945, 151 F.2d 899, where there were communications between the jury and the bailiff having them in charge; and Wheaton v. United States, 8 Cir., 1943, 133 F.2d 522, 527.

Mr. William E. Owen, Washington, D. C., with whom Mr. John M. Webster, Washington, D. C., was on the brief, for appellants.

Mr. Charles B. Murray, Asst. U. S. Atty., with whom Messrs. George Morris Fay, U. S. Atty., and Joseph M. Howard

I. The above cases deal with communications concerning the jury's consideration of a case on trial before them, while in the case at bar, as it developed, the conversations initially assailed consisted of bantering exchanges regarding an unrelated case being handled by the prosecuting attorney

1. This is the substance of the written motion of Duncan appearing in the record. The proceedings on the motion were participated in by both defendants, with consent of the court. We treat the motion as available to both appellants, as does the Government.

in the Court of Appeals. But the reasons for the presumption of prejudice apply to such communications because they too bring the impartiality of the jurors into question. So we think the presumption itself applies notwithstanding the conversations did not relate to the case on trial. The presumption, however, is rebuttable. Mattox v. United States, supra, 146 U.S. at page 150, 13 S.Ct. 50. See, also, Higgins v. United States, 1946, 81 U.S.App.D.C. 371, 160 F.2d 222, certiorari denied, 1947, 331 U.S. 822, 67 S.Ct. 1304, 91 L.Ed. 1839; United States v. Compagna, 2 Cir., 1944, 146 F.2d 524, certiorari denied, 1945, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422, rehearing denied, 1945, 325 U.S. 892, 65 S.Ct. 1084, 89 L.Ed. 2004.

■■ The trial court adopted the appropriate procedure of probing the matter by an extensive hearing. At this hearing jurors who participated in the interchanges testified they were not biased thereby. Appellants urge that it was error to receive this testimony. We disagree. The general rule which forbids jurors to testify "relating to their motives and reasons influencing their verdict" Hyde v. United States, 1910, 35 App.D.C. 451, 488, citing Mattox v. United States, supra, 146 U.S. at pages 140–148, 13 S.Ct. 50–52; Economon v. Barry-Pate Motor Co., 1925, 55 App.D. C. 143, 3 F.2d 84, 86; Orenberg v. Thecker, 1944, 79 U.S.App.D.C. 149, 143 F.2d 375, does not necessarily preclude a juror from disclaiming bias when its existence is asserted because of private conversations or communications. Higgins v. United States, supra. In the Mattox case, supra, 146 U.S. at page 148, 13 S.Ct. 50, Chief Justice Taney's opinion in United States v. Reid, 1851, 12 How. 361, 366, 13 L.Ed. 1023, to this effect is referred to with apparent approval. See, also, McDonald v. Pless, 1915, 238 U.S. 264, 269, 35 S.Ct. 783, 785, 59 L.Ed. 1300, where the general rule is stated to be "that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict." In Clark v. United States, 1933, 289 U.S. 1, 18, 53 S.Ct. 465, 470, 77 L.Ed. 993, it is said this rule "is not without exceptions (Mattox v. United States, 146 U.

S. 140, 148 [13 S.Ct. 50, 36 L.Ed. 917] ; cf. Wigmore, Evidence, vol. 5, §§ 2353, 2354; Woodward v. Leavitt, 107 Mass. 453; Hyman v. Eames [8 Cir.] 41 F. 676; Fuller v. Fletcher [C.C.], 44 F. 34, 39) * * *." Though a verdict, therefore, may or may not be impeached by testimony of a juror, depending upon the circumstances, it may in such a case as this be defended, and this may be done with the aid of a juror's own evidence that his impartiality had not been affected. The judge's conclusion to that effect, however, may not rest entirely upon the testimony of the jurors, United States v. Rakes, D.C.E.D.Va.1947, 74 F. Supp. 645, because that alone is too uncertain a basis for resolving the issue of prejudice.

■■ If the use of affidavits be thought a doubtful method for getting at the facts United States v. Reid, supra; Wheaton v. United States, 8 Cir., 1943, 133 F.2d 522, 527, hearing witnesses on examination and cross-examination is free of such doubt. Wheaton v. United States, supra. Since, therefore, the proper procedure was followed and no error in its conduct appears the ultimate question for our decision on review is whether or not the conclusion of the trial judge as to the absence of bias should be disturbed. The standard to guide us, used by the Supreme Court in Mattox v. United States, supra, is whether there was an abuse of discretion in denial of a new trial. We note, also, that where a new trial is sought on the basis of private communications between counsel and jurors, abuse might be more readily found than ordinarily, for such conduct must be "closely scrutinized." United States v. Compagna, supra. It imperils the fairness of the trial and tends to undermine the confidence of the community and of the parties in the trial process. As we have seen, it raises a presumption of prejudice. A trial judge should not hesitate to grant a new trial where there is any significant doubt whether the presumption of prejudice has been overcome.

■ Judge Pine approached the problem with great care both in permitting the development of the evidence and in consider-

ing it in the context of the trial over which he had presided. He did not rely entirely upon the conclusions of the jurors as to their own impartiality. He pointed out that one of the attorneys who represented the accused at the trial witnessed the conduct complained of, that the other defense counsel was advised of it, and yet neither took action.[2] He said,

"Here the jurors involved testified, with the right of cross-examination accorded to the defendant which was zealously exercised, that they were not prejudiced by what the District Attorney did, and on the record, I find no basis, tangible or intangible, that they were prejudiced in the slightest degree by his conduct."

He properly condemned what occurred, but in the light of all the evidence we cannot say he abused his discretion in refusing a new trial because of it. The question of prejudice is one about which he was especially competent to render a sound opinion. No adequate basis appears for reversal of his position.

▪▪▪ II. During the hearing on the motions there was disclosed, for the first time, a brief conversation between a juror and the prosecuting attorney about the case itself. This appears from the following portion of the examination of the juror:

"Q. Did you at any time during the trial have any conversation with * * * [the prosecuting attorney] with regard to the case that was then on trial? A. One question. Q. When was that? A. I think it was the evening during recess after the trial had started. Q. What was it? A. When the counsel for the defense asked if anyone had ever been robbed or anything stolen or taken from them and I had a mirror removed from my car and I asked if that had any bearing on the case and he said no. That was all that was said."

On cross-examination he put it this way: "I asked him would the removal of a stolen mirror have any affect on the case." The prosecuting attorney made no report

of this conversation to the court and did not advise defense counsel. Clearly he should have done both. Nevertheless, as with the other conversations, the question in the end is whether the trial judge acted within the permissible area of discretion in not setting aside the conviction because of this occurrence. We have considered the matter from the several points of view which are urged upon us or which come to our minds. (1) It cannot be said that nondisclosure of the incident deprived defendants of an opportunity to strike this juror by the exercise of a peremptory challenge, because it was too late for that when the conversation occurred. (2) Had the juror disclosed the mirror incident when asked on voir dire as to whether or not he had ever been robbed or had anything stolen from him, the defense might then have exercised a peremptory challenge against him; but it is the rule that his failure to make the disclosure would constitute reversible error only if such failure resulted from a purposefully incorrect answer or from deliberate concealment.

"* * * it is the duty of every juror to answer questions affecting his qualifications honestly, and if he conceals a material fact which, if disclosed, would probably have induced counsel to strike him from the jury, a new trial should ordinarily be ordered. But that is not this case. Here there is no evidence to show that the juror purposely failed to answer the questions of counsel or that he deliberately concealed his acquaintance with them. * * *" Carpenter v. United States, 1938, 69 U.S. App.D.C. 306, 307, 100 F.2d 716, 717; see, also, Orenberg v. Thecker, supra. It is not shown that the juror purposely answered incorrectly or deliberately concealed a material fact. (3) The incident does not disclose a disqualification of the juror for which an alternate could have been substituted under Rule 24(c), Fed.Rules Crim.Proc. 18 U.S.C.A. Cf. Gillars v. United States, 1950, 87 U.S.App.D.C. 16, 182 F.2d 962. (4) There is the possibility that had the judge been advised promptly of what occurred, as very definitely should

---

2. The motion for a new trial was filed, after conviction, by new counsel.

have been done, a mistrial might have been declared if requested by defendants. While the same judge refused to grant a new trial, this was after completion of the trial and is by no means conclusive as to the course he would have adopted had the conversation been promptly called to his attention when it took place. Nevertheless we are unable to say that he then would have or then should have declared a mistrial. To say he would have done so would be to speculate upon too tenuous a basis. To say he should have done so would be to hold that a relationship existed between the juror and the prosecuting attorney which deprived defendants of the former's impartial consideration. This brings us in the end to the following: (5) The searching inquiry conducted by the trial judge for evidence of bias or prejudice gives adequate support to his negative conclusion on this question of partiality. We do not feel justified in going so far in the other direction as was properly done in Stone v. United States, 6 Cir., 1940, 113 F.2d 70, 77, 78, where in view of an overture to a juror in the nature of bribery, the court said it must be shown no injury could have occurred. See, also, United States v. Marine, D.C.Del.1949, 84 F.Supp. 785, 787. We hold in the present case that the question of bias or prejudice was susceptible of an intelligent judgment by the trial judge on the evidence adduced upon the hearing on the motions, and that we are not warranted in overturning his conclusion.

■ If jurors ask questions of counsel in private the matter should promptly be brought to the court's attention in the presence of opposing counsel. Further, fraternizing, or the appearance of it, between counsel and jurors should be carefully avoided. In affirming the judgments of the District Court we accordingly join in Judge Pine's disapproval of the occurrences which unnecessarily endangered, though in this instance they did not destroy, both the actuality and the appearance of fairness.

Affirmed.