**UNITED STATES v. REMMER.**

No. 12177.

United States District Court, D. Nevada.

July 10, 1954.

Madison B. Graves, U. S. Atty., Las Vegas, Nev., for plaintiff.

Leslie C. Gillen, John R. Golden, San Francisco, Cal., Spurgeon Avakian, Oakland, Cal., Lohse & Fry, Reno, Nev., for defendant.

LOUIS E. GOODMAN, District Judge, (sitting by special designation).

Pursuant to the directions of the Supreme Court, 347 U.S. 230, 74 S.Ct. 450, a hearing was had in the above entitled court at its court room in Carson City, Nevada, on June 7, 8, and 9, 1954 for the purpose of determining whether or not the "incident complained of", and described in the opinion of the Supreme Court, 347 U.S. 228, 74 S.Ct. 450, 452, was harmful to the petitioner, i. e., defendant Remmer.

The government assumed the burden of proceeding with the evidence. The court heard the testimony of 27 witnesses—

12 members of the jury.

2 alternates on the jury.

The person who communicated with the foreman of the jury during the trial of the case.

The Trial Judge.

The secretary to the Trial Judge.

5 government attorneys who participated in the conduct of the case.

The FBI agent, who investigated the "incident complained of."

A deputy U. S. Marshal, who, among other deputies, had charge of the jury during the trial.

The wife of the person who communicated with the foreman of the jury.

The wife of the foreman of the jury.

One of the attorneys for the defendant.

Since the Supreme Court empowered this court, if it found that "the incident complained of" was harmful to the petitioner, to grant a new trial, the court proceeded as if it were hearing a motion for a new trial based upon the ground that "the incident complained of" was harmful to the defendant. (This is the hearing that the Supreme Court declared should have been held in the first instance.)

I find that what occurred was as follows:

On or about December 20, 1951, after the trial of U. S. v. Remmer had been in progress approximately 3 weeks, one James H. Satterly visited the home of Irwin J. Smith, foreman of the jury, for the purpose of conducting some insurance business with Smith, who was an insurance agent or broker. As well, Satterly had a social acquaintance with the foreman as a fellow hunter. During the course of the visit at the foreman's home, Satterly made substantially the following comment: I know Bones Remmer very well. He sold Cal Neva for $850,000 and really got about $300,000 under the table which he daresn't touch. Why dont you make a deal with him?

Foreman Smith interrupted Satterly and in substance replied that he was a member of the jury and that he had been instructed by the court not to discuss the case with anyone. No more was said on the subject.

Foreman Smith regarded the comment of Satterly as being jocular, but, later, after turning the incident over in his mind, and being mindful of the admonition of the court,[1] reported it to the trial judge, the Honorable Roger T. Foley on December 22nd. Thereupon Judge Foley notified the U. S. Attorney's office and Assistant U. S. Attorney Bruce R. Thompson visited Judge Foley. The Judge and Mr. Thompson discussed the incident and Mr. Thompson decided that the incident should be investigated with the view of determining whether Satterly had committed an offense against the laws of the United States.[2] To that end, and for that purpose, FBI agent T. Hiram Collister was directed to make an investigation. Mr. Collister then interviewed Foreman Smith, advising him at the time that he, Smith, was not being investigated, but that the FBI was making an investigation to determine whether or not there had been a violation of law by Satterly. Information concerning Satterly was given by foreman Smith to agent Collister. The agent further made inquiries as to the criminal and credit record of Satterly. The FBI was then unable to locate Satterly, who had departed for the northwest. Subsequently, the FBI returned a report to the U. S. Attorney, in substance containing the foregoing facts. The U. S. Attorney's office then determined that there was not sufficient evidence upon which to take proceedings against Satterly. None of the foregoing matters were, at any time, communicated to any member of the jury or to the two alternates, and none of the jurors or alternates learned of the foregoing events until after their verdict was rendered.[3]

---

1. At each recess, the trial judge admonished the jury "not to permit anyone to talk to you about the case * * * if anyone should persist in talking to you about the case, after you have informed them that you are a member of the venire, you report that individual to the court."

2. 18 U.S.C. § 1503.

3. One of the jurors testified that during the trial one of the deputy marshals who had charge of the jury inquired of him whether he knew or had heard of any outsider talking to a juror about the case. The juror thought that it was deputy marshal Boyd, but was uncertain about it

Satterly denied that he had made the comment to foreman Smith.

The foreman of the jury testified that the events described in no way affected his state of mind or his vote in arriving at the verdict.[4]

It is not true that the FBI agent was sent to investigate the foreman of the jury as to his conduct, as was conjectured in the opinion of the Supreme Court, 347 U.S. at page 229, 74 S.Ct. 450. There is not the slightest doubt, and I so find, that the purpose of the investigation was to determine whether or not *Satterly* had committed an offense.

I am completely satisfied that the incident referred to had no effect whatever upon the judgment, or the integrity or state of mind of the foreman of the jury. After thorough examination, the foreman appeared to me to be a forthright and honest man who took his duties as a juror with the utmost seriousness and with a full understanding of his responsibility.[5] His testimony, plus that of the FBI agent Collister, the Judge of the Court and Assistant U. S. Attorney Thompson, is conclusive that the incident referred to was not in any way concerned with any investigation of the jury as to the conduct of any member of the jury either relating to the trial of the case or otherwise.

Consequently, the court finds that "the incident complained of" was entirely harmless so far as the petitioner was concerned and did not have the slightest bearing upon the integrity of the verdict nor the state of mind of the foreman of the jury, or any of the members of the jury. Thus any presumption of prejudice[6] is conclusively dispelled. The finding aforesaid is one entirely of fact.

It has been argued by the defense that even though the court should determine factually that the defendant was not harmed, nevertheless, there is still doubt, in a legal sense, as to how the foreman's mind was affected by the incident and therefore the doubt should be resolved in favor of defendant and a new trial granted. But that means that decision would rest on conjecture and hypothesis and not fact. The Supreme Court had the power to decide the question involved as a matter of law. It did not do so. Hence our decision must be on fact.

It has been contended that Satterly's comment to the foreman concerning the defendant's alleged interest in Cal-Neva, was an unauthorized and improper communication to a member of the jury relating to a matter in issue upon the merits of the trial, and hence, since it was not disclosed to the defense,

and conceded that it might have been another deputy. Deputy marshal Boyd denied that any such conversation had occurred. Thus the testimony in this regard is most vague, but even if some such event occurred, it had not the slightest bearing upon the subject matter of the hearing, nor did it in any way affect the jury's verdict.

4. I permitted the witness to testify that the Satterly incident did not prejudice his verdict. There seems to be a division of authority as to whether such opinion testimony is admissible. See Mattox v. U. S., 146 U.S. 140, 13 S.Ct. 50, 36 L. Ed. 917; Ryan v. U. S., 89 U.S.App.D.C. 328, 191 F.2d 779, 781; U. S. v. Rakes, D.C., 74 F.Supp. 645; Higgins v. U. S., 81 U.S.App.D.C. 371, 160 F.2d 222; Stone v. U. S., 6 Cir., 113 F.2d 70. Being mindful of this state of the law, I stated, at the time the answer of the witness was admitted, that I would not base decision upon such opinion testimony.

5. One of the jurors, Mrs. Helen Mack, testified that after the verdict, foreman Smith told her that he had been under great pressure. This, it was argued, indicated he had been affected by the Satterly incident. This, however, is a wholly unwarranted inference. The case had been under discussion by the jury for 2½ days. Another juror also stated that he had been under pressure. What was obviously referred to was the strain of several months of trial and days of deliberation, as well as the necessity of attending to the private business of the juror. Since the foreman had relieved his mind by promptly reporting the Satterly incident to the trial judge, it is obvious that he was not referring to it, as a "pressure" in his conversation with juror Mack.

6. Remmer v. U. S., 347 U.S. 229, 74 S.Ct. 450; Mattox v. U. S., 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. U. S., 8 Cir., 133 F.2d 522.

warrants a new trial. While the failure of the trial court to disclose this incident to the defense, can be considered error, Remmer v. U. S., supra, yet at most it would be only presumptively prejudicial. And I find that, in fact, under all the circumstances, it was harmless. U. S. v. Compagna, 2 Cir., 146 F.2d 524, 528.

Ordered, Adjudged and Decreed that the "incident complained of" was harmless to the defendant Remmer and in no way affected the fairness of his trial or the jury's verdict.[7]

7. Inasmuch as the Supreme Court has not specified, in its mandate, what the court should do if it finds the "incident complained of" *harmless,* I have followed the procedure of making the foregoing order. I have directed the Clerk of the court to file the foregoing opinion, findings and order and to forthwith transmit a certified copy thereof to the clerk of the U. S. Supreme Court and furnish a copy thereof to defense counsel and the U. S. Attorney. A true copy of the transcript of the testimony shall be retained by the Clerk to be available to the Supreme Court, if required.