Dewayne WALLER, Appellant,

v.

UNITED STATES, Appellee.

Amerigo B. GASKINS, Appellant,

v.

UNITED STATES, Appellee.

Jacob E. PATTERSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10881, 10924 and 10964.

District of Columbia Court of Appeals.

Argued April 11, 1978.

Decided July 5, 1978.

Rehearing En Banc Denied Aug. 17, 1978 in Nos. 10881 and 10964.

Wilhelmina Reuben Cooke, Washington, D. C., appointed by this court, with whom Arthur F. Mathews and Lynn Bregman, Washington, D. C., were on the briefs, for appellant Waller.

Frederick J. Sullivan, Bowie, Md., appointed by this court, for appellant Gaskins.

Peter Chatilovicz, Washington, D. C., appointed by this court for appellant Patterson, adopted the briefs of appellant Waller, but did not participate in argument.

E. Thomas Roberts, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Jonathan Lash, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

On March 25, 1976, following a two-week jury trial, appellants were each found guilty of felony murder, first-degree burglary while armed, attempted armed robbery, three counts of armed robbery, three counts of assault with intent to commit robbery while armed, and assault with a dangerous weapon. Appellant Waller alone was found guilty of carrying a pistol without a license.[1]

The events which resulted in these convictions took place on February 18, 1975 in the vicinity of 14th and Girard Streets, N.W. At approximately 2 a. m., appellants and Channeta Patterson[2] encountered Robert Reid, with whom they were not acquainted, and asked him where they could purchase some drugs. Reid told appellant Patterson that he would make a purchase for them and instructed appellant Patterson and his companions to await his return in their car across the street. Instead, appellants waited until Reid had entered a nearby building, and then alighted from the car. Appellants armed themselves—appellant Patterson with a sawed-off shotgun, appellant Waller with a pistol, and appellant Gaskins with a knife. The men entered the building and forced their way into the apartment to which Reid had gone. When they announced a robbery, occupant James Granby started to run. Appellant Waller shot at him and missed as Granby locked himself in the bathroom. Appellant Patterson ordered Reid to bring Granby to him. Reid complied. Patterson demanded narcotics from Granby, and when the latter hesitated, hit him on the head with the butt end of his shotgun. As Granby lay on the floor, semiconscious, Patterson put the shotgun to his chest and killed him.

Appellants rounded up the remaining eight occupants of the apartment, took their money, and departed to the car in which Patterson's wife Channeta, was waiting.

Appellant Patterson was arrested five weeks later, following a photo identification of him. He and Channeta Patterson gave statements admitting their involvement in the offenses and identifying appellants Waller and Gaskins as their coparticipants. Channeta Patterson so testified at trial. Her testimony was corroborated by testimony of five of the victims, at least one of whom identified each appellant. Only appellant Gaskins denied his involvement; his denial is restated here and is addressed in section IV, *infra*.

I

Appellants Waller and Gaskins contend[3] that the trial court committed reversible error in denying their motions for a mistrial because the government failed to rebut the presumption of prejudice arising from an unauthorized communication with a juror. They further contend that the voir dire examination of jurors conducted by the court in this connection was insufficient to ascertain the extent to which they were prejudiced by the unauthorized communication.

On March 15, 1976, following four days of trial, it became necessary to recess proceedings for one week. As the jurors were leaving the courthouse, a man approached alternate juror Annie Gordon and said, "you had better not find him guilty." Ms. Gordon told juror Julia Ferguson what had

1. Appellant Gaskins was sentenced to 20 years to life for felony murder, and received consecutive sentences of 10 years to life and 3 to 10 years for first-degree burglary while armed and assault with a dangerous weapon, respectively. He received concurrent maximum sentences for the remaining counts. Appellants Waller and Patterson were each sentenced to 20 years to life for felony murder and a consecutive 20 years to life for first-degree burglary while armed. They each received concurrent maximum sentences for the remaining counts.

2. Defendant Channeta Patterson, appellant Patterson's wife, pleaded guilty to armed robbery and appeared as a government witness at appellants' trial.

3. Appellant Patterson has received this court's permission to join in this contention, and in the argument addressed in section III, *infra*.

happened, and then immediately reported the incident to the trial court.

When trial reconvened the following Monday, the trial court segregated Ms. Gordon from the other jurors and informed all counsel of the incident. Ms. Ferguson was questioned and revealed that when Ms. Gordon had failed to appear in the jury room that morning, she told two other jurors that "somebody had said something to [Ms. Gordon]." Ms. Ferguson said that she had not disclosed to her cojurors the nature of the statement. It was confirmed that at least two other jurors had indeed become aware that Ms. Gordon had been approached. The trial court proceeded to voir dire the entire panel one at a time, and asked each juror three questions:

(1) Have you discussed this case with anyone, or has anyone discussed this case with you?

(2) Have you heard anyone else discuss it?

(3) Do you feel, at this time . . . that you may continue to serve as a fair and impartial juror in this case, without any prejudice or bias, or without any fear?

 None of the jurors expressed doubt that they could continue serving impartially. The trial court excused Ms. Gordon because she had to be questioned as part of a police department investigation of the threat, and made the following findings:

Well, based on my voir dire of each and every member of this jury, it's my determination, at this time, that the extent of the problem is minor, and small, and of limited significance, if any. Neither the juror to whom this remark was addressed, nor anyone that she has come in contact with, has placed undue emphasis on the remark. Nor, has it substantially affected this juror, or anyone to whom she has spoken.

The nature of the problem, otherwise, is speculative, at best, in terms of what was said, by whom, under what circumstances, and when. I found no occasion on the part of any member of the jury, that they knew precisely, or had a distinct and definite understanding of what was done, or what was said, or by whom, or when, or under what circumstances.

Further, it's my finding, based upon each and every juror's answers to my questions, and my ability to see and view their demeanor, and I find, at this time, that each and every one of those jurors, including the lady to whom that remark was apparently addressed, is able and willing to continue in this case, as a fair and impartial juror. Without any prejudice or without any bias, and without any fear.

And so, on that basis, the motion for mistrial, with respect to each and every one of these defendants, will be denied, at this time.

It is well settled that

[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about a matter pending before the jury is . . . deemed presumptively prejudicial . . .. The . . . burden rests heavily upon the government to establish . . . that such contact with the juror was harmless to the defendant.

*Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *accord Mattox v. United States,* 146 U.S. 140, 138 S.Ct. 50, 36 L.Ed. 917 (1892); *United States v. Burke,* 496 F.2d 373 (5th Cir.), *cert. denied,* 419 U.S. 966, 95 S.Ct. 229, 42 L.Ed. 182 (1974). Where an unauthorized communication with one or more members of the jury is brought to the trial court's attention during trial, and the presumption of prejudice to the defendant is not rebutted, the trial court must declare a mistrial. *Mattox v. United States, supra; United States v. Evans,* 542 F.2d 805 (10th Cir. 1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977); *United States v. Burke, supra; Ryan v. United States,* 89 U.S.App.D.C. 328, 191 F.2d 779 (1951), *cert. denied,* 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691 (1952).

 At the same time, appellate courts have long reviewed such trial court deter-

minations by reference to whether discretion was abused, *Hammond v. United States,* D.C.App., 345 A.2d 140 (1975), and have recognized that "[t]he question of prejudice [is] one about which [the trial court is] especially competent to render a sound opinion." *Ryan v. United States, supra,* 89 U.S.App.D.C. at 331, 191 F.2d at 782. In examining the soundness of the trial court's opinion, appellate courts have considered particularly important the inquiry conducted by the trial court on the question of prejudice. That was our basis for affirming the trial court's denial of appellant's mistrial motion in *Hammond v. United States, supra.* There, appellant's father appeared in court inebriated, and was escorted by a marshal from the courthouse. Appellant then engaged the marshal in a shouting match, and was physically removed from the courtroom. The jury observed this. The trial court thereafter called the jurors to the bench individually to determine if they could reach a fair verdict, and, satisfied with their affirmative replies, permitted the trial to continue.

In *United States v. Evans, supra,* a series of bizarre incidents triggered the necessity for the trial court's inquiry of the jury. First, a juror received a letter signed in the name of appellant. Then, a bomb threat was received at the courthouse, of which the jury became aware. Finally, a defense witness assaulted a juror in the jury box. Repeated motions for mistrial were denied; the denials were affirmed on appeal. "The jury was questioned extensively about the effect of the incidents. They repeatedly responded [it] would have no effect on their impartiality." *Id.* at 815.

*Ryan v. United States, supra,* involved a motion for a new trial raised because of conversations which had taken place between the prosecutor and several jurors during a recess. In affirming denial of a new trial motion, the court noted that "[t]he searching inquiry conducted by the trial judge for evidence of bias or prejudice gives adequate support to his negative conclusion on this question of partiality." *Id.* 89 U.S.App.D.C. at 332, 191 F.2d at 783.

■■■ In the instant case, the trial court asked the members of the jury individually whether they could continue to serve impartially. The three questions did not specifically refer to the incident involving Ms. Gordon because the trial court properly did not want to risk tainting those jurors who remained unaware that one of their colleagues had been approached, or who had heard rumors but possessed no specific information. All members of the jury, those aware and unaware, stated unequivocally that they could continue to serve impartially. We observe that the incident which occasioned inquiry in the instant case was innocuous compared to those found not worthy of mistrial in *Hammond v. United States, supra,* and *United States v. Evans, supra,* and we accord some significance to the fact that the unauthorized communication here did not introduce inadmissible evidence to the jury. *See Mattox v. United States, supra; United States v. Rattenni,* 480 F.2d 195 (2d Cir. 1973).[4]

■■■ Finally, we repeat the court's observation in *Klose v. United States,* 49 F.2d 177, 181 (8th Cir. 1931):

> It is the duty of the trial judge to maintain the integrity of trials by jury, and if it appears at any stage of the trial before verdict that misconduct of any juror or any other person has tainted the panel . . . the trial should be stopped and a mistrial granted. Yet, it does not follow that a mistrial should be granted whenever any evilly disposed person in no way connected with the parties, attempts to make improper remarks or advances to a juror . . . . Such a rule might

---

4. We do not, however, agree with the government's assertion that the weight of the evidence against appellants should be taken into account in determining whether the unauthorized communication should have resulted in a mistrial. *See United States v. Rattenni, supra* at 198. Nor are we persuaded by the government's assertion at oral argument that the considerable time and resources spent in connection with this case justified denial of appellants' mistrial motions. Our sole consideration is "the crucial importance of protecting the integrity of the trial process from [unauthorized] intrusions." *Id.*

preclude bringing any desperate offender to justice. [Citations omitted.]

■ We hold that the voir dire examination conducted below sufficed to ascertain the extent of prejudice flowing from the unauthorized communication, and that the responses thereto rebutted the presumption of prejudice arising under such circumstances. The trial court accordingly did not abuse its discretion in denying appellants' motions for a mistrial.[5]

## II

Appellant Waller contends that his conviction of first-degree felony murder was improper because D.C.Code 1973, § 22–2401[6] cannot legally support the first-degree felony murder conviction of an aider and abettor. He further contends that, insofar as § 22–2401 may be read to permit such a conviction, it is unconstitutionally vague.

Appellant Waller does not question the sufficiency of evidence that he aided and abetted the armed robbery committed by appellant Patterson. He recognizes that D.C.Code 1973, § 22–105 holds an aider and abettor responsible as a principal for all acts committed in furtherance of or which are the natural and probable consequences of the perpetration of a felony. *Harris v. United States,* D.C.App., 377 A.2d 34 (1977); *In re D.M.R.,* D.C.App., 373 A.2d 235 (1977). Appellant argues, in effect, that to convict an aider and abettor of first-degree felony murder, the government must prove two separate intents: first, intent to commit the underlying felony, and second, intent to commit the homicide.

■ In *United States v. Branic,* 162 U.S.App.D.C. 10, 495 F.2d 1066 (1974), the court listed the two elements requisite for conviction of felony murder. First, the defendant or an accomplice must have inflicted injury on the decedent from which he died. Second, the injury must have been inflicted in perpetration of a specified felony. No distinction was made between principals and aiders and abettors for purposes of felony murder liability. Only intent to commit the underlying felony need be proved. Similarly, in *United States v. Heinlein,* 160 U.S.App.D.C. 157, 167, 490 F.2d 725, 735 (1973), the court observed:

Accomplices . . . *are exposed to first degree murder accountability by reason of the aiding and abetting statute.* It is true that exposure does not depend upon proof of an intent to kill on the part of the accomplice; that intent is supplied by the fact of participation in the felony giving rise to the killing. [Emphasis added.]

■ These cases are fatal to appellant Waller's argument; indeed, he offers no authority in opposition. With respect to appellant Waller's assertion that § 22–2401 is unconstitutionally vague, we reiterate our discussion in *Leiss v. United States,* D.C.App., 364 A.2d 803, 806–07 (1976), in which we rejected the same argument raised in connection with D.C.Code 1973, § 22–3102, the unlawful entry statute:

Moreover the statute is not subject to the criticism that its prohibitions are phrased in such imprecise language as to be beyond the comprehension of those seeking to conform their behavior to its mandate. The type of conduct subject to

---

5. Cases on which appellants primarily rely are factually distinguishable from the instant case. In *Mattox v. United States, supra,* reversal was based on an evidentiary ground and not because petitioner's new trial motion had been denied. The Court observed, however, that it would have reversed for improper denial of the new trial motion because the trial court had refused to consider affidavits of two jurors that the bailiff had made prejudicial remarks during jury deliberations, and that a newspaper commenting on the case was brought into the jury room. In *Remmer v. United States, supra,* the judge was informed by a juror that an unnamed person had attempted to bribe him. Remand for consideration of petitioner's previously denied new trial motion was based on the trial court's failure to inform the petitioner that a juror had been approached, and failure to conduct a hearing on the matter.

6. Section 22–2401 states in pertinent part:

Whoever . . . without purpose to do so kills another in perpetrating . . . robbery . . . is guilty of murder in the first degree.

its sanctions is clearly identified in words of common understanding, with little room for misinterpretation or conjecture. With respect to this aspect of appellant's claim of vagueness, we note the Supreme Court's views as expressed in *Colton v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972):

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

■ In the case at bar, appellant Waller cannot realistically claim to have been unaware that his conduct could result in one of the sanctions which was ultimately imposed upon him: conviction for first-degree murder. A reading of § 22–2401 in conjunction with § 22–105 reasonably compels that conclusion. Relevant case law amplifies the point. His conviction for felony murder is affirmed.[7]

### III

■ Appellant Waller contends that the Double Jeopardy Clause prohibits his simultaneous prosecution and separate punishment for both felony murder and for the underlying felony of attempted armed robbery.[8] He argues that the underlying felony merges into the felony murder conviction.

■ Merger of two offenses is ordinarily appropriate when the lesser offense consists entirely of some but not all of the elements of the greater offense. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Hall v. United States*, D.C.App., 343 A.2d 35, 38–39 (1975). Thus, for example, assault merges into assault with a dangerous weapon, and assault with a dangerous weapon merges into armed robbery. *See Bates v. United States*, D.C.App., 327 A.2d 542 (1974); *Taylor v. United States*, D.C.App., 324 A.2d 683 (1974); *Quick v. United States*, D.C.App., 316 A.2d 875 (1974).

In determining whether merger is appropriate, this court has not only analyzed the language of the statutes involved and the wording of the indictment, but has looked also to the societal interests protected by the statutes under consideration. *Hall v. United States, supra*;[9] *cf. Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959).

Shortly after our decision in *Hall*, we affirmed separate convictions for felony murder (burglary) and first-degree burglary, holding that "the societal interests served by each statute are separate and distinct." *Blango v. United States*, D.C. App., 373 A.2d 885, 888 (1977). In further explaining this rationale, we observed sub-

---

**7.** We reject as frivolous appellant Waller's contention that his 20 year to life sentence for felony murder is cruel and unusual punishment. *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2291, 53 L.Ed.2d 344 (1977); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

**8.** It is immaterial to this analysis that appellant Waller was sentenced concurrently for conviction of the underlying felony. If this conviction is founded in error, we are bound to reverse, in light of potential collateral consequences stemming from the conviction. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**9.** In *Hall*, we held that simple assault was not a lesser included offense of obstruction of justice by assaulting a witness, and that conviction of

the former did not merge into conviction of the latter. We noted that

> the interests protected by the two statutes are widely disparate. The crime of obstructing justice is societal in that it is intended to insulate the criminal justice system from corruption whereas the crime of simple assault is intended to protect the physical security of individual citizens. [*Id.* at 39.]

*See United States v. Butler*, 149 U.S.App.D.C. 300, 462 F.2d 1195 (1972) (consecutive sentences for murder, housebreaking, larceny upheld); and *Irby v. United States*, 129 U.S.App. D.C. 17, 390 F.2d 432 (1967) (en banc) (consecutive sentences for housebreaking and robbery upheld), in both of which the United States Court of Appeals noted the different societal interests protected by each statute.

sequently that "the societal interest served by the burglary statute, protection of occupied dwellings, is separate and distinct from that of the murder statute, security and value of the person." *Harris v. United States, supra* at 38.

We find persuasive the analysis of then Chief Judge Bazelon in his statement as to why he would grant rehearing en banc in *United States v. Greene*, 160 U.S.App.D.C. 21, 489 F.2d 1145 (1973):

At common law, homicides were divided into two categories, murder and manslaughter, with murder requiring a showing of "malice." Any homicide committed in the course of a felony was considered murder because malice could be implied from the commission of the felony. When homicides were further subdivided by statute into first degree murder, second degree murder and manslaughter, the doctrine of felony murder was preserved, and the underlying felony was viewed as providing the "premeditation" and "deliberation" otherwise required for first degree murder; as well as malice, where necessary.

Given this rationale for the felony murder doctrine, it strains credulity to hold that the underlying felony merges into the felony murder. The statute proscribing the underlying felony—robbery, for example—is designed to protect a wholly different societal interest from the felony murder statute, which is intended to protect against homicide.

The underlying felony is an essential element of felony murder only because without it the homicide might be second degree murder or manslaughter. [*Id.* at

44–45, 489 F.2d at 1168–69 (footnotes omitted).]

 We believe that while the underlying felony, here attempted armed robbery, is an element of felony murder, its principal function is as an intent divining mechanism. It permits the jury to infer the state of mind requisite for conviction of murder in the first degree. As such, it is not a lesser included offense of felony murder. We cannot, moreover, accept a construction of law the effect of which would be to render the underlying felony a nullity any time death occurred during its perpetration. Congress enacted two separate statutes to protect two separate societal interests, and acceptance of appellant Waller's contention would comport with neither congressional intent nor common sense.

 Finally, appellant Waller's reliance on *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), is misplaced. There, the Court restated the well settled lesser included offense rule that where the same act violates two statutory provisions, the test to be applied to determine whether there are two offenses is whether each provision requires proof of a fact which the other does not. *Id.* at 166, 97 S.Ct. 2221, *citing Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In the case at bar, we are not presented with one act violating two distinct statutory provisions. We instead examine two acts—attempted armed robbery, and homicide—and the only connection between them is that commission of the former permits a finding of intent requisite to convict of the latter in the first degree.[10] Appellant Waller's conviction

---

10. Nor does appellant Waller find support in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). There, Harris was convicted of felony murder (robbery). Thereafter, the state sought and obtained Harris' conviction for the underlying felony. The Supreme Court reversed the second conviction, and observed:

Where, as here, conviction for a greater crime, murder, cannot be had without conviction for the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime *after* conviction for the greater one. [*Id.* 97 S.Ct. at 2912 (emphasis added).]

*Harris* turned on Double Jeopardy principles; petitioner had already been put in jeopardy for the robbery he had committed, and the state could not constitutionally do so again in a subsequent proceeding. The case at bar involves a unitary prosecution, presenting no Double Jeopardy considerations. We find the cases distinguishable on this basis.

and concurrent sentence for attempted armed robbery is affirmed.[11]

## IV

Appellant Gaskins contends that the trial court abused its discretion in limiting his cross-examination of three government identification witnesses.

On direct examination, witness Robert Reid identified appellants Waller and Patterson as two of the perpetrators. He was asked nothing with respect to the identity of the third perpetrator. On cross-examination, appellant Gaskins sought to introduce into evidence a description of the third assailant which Reid had given police, in order to show that the third, unnamed individual identified by Reid was several inches shorter than appellant Gaskins. The government did not object. Instead, the trial court intervened, sua sponte, to prohibit cross-examination on this point, expressing the view that witness Reid's description of the unnamed third assailant bore no relation to his testimony on direct examination.

The same thing happened with respect to government witnesses Albert Williams and Percy Mack, each of whom identified only appellants Waller and Patterson, and each of whom was asked nothing about a third assailant. Appellant Gaskins again sought to introduce evidence that these witnesses had given police descriptions of a third individual with physical characteristics different from his. The trial court again prohibited this.

Appellant Gaskins asserts that he was thus denied his Sixth Amendment right to confront witnesses against him. He argues that witnesses Reid, Williams and Mack's incomplete identification testimony on direct examination opened the door to completion of that testimony on cross-examination, because although this testimony referred specifically to his codefendants only, it had the effect of implicating all three defendants jointly.

In *Smith v. United States*, D.C.App., 330 A.2d 519 (1974), appellant, charged with burglary and armed robbery of a drug dealer, defended that he bought marijuana from the dealer, and had simply returned it for a refund after use of the drug made him ill. He sought to introduce this defense during the government's case-in-chief by cross-examining government witnesses whose direct testimony had not addressed the matter. The trial court prohibited this, and we held that the trial court had not abused its discretion in doing so.

The general rule in this jurisdiction is that "it is proper to permit upon cross-examination the bringing out of anything tending to contradict, modify, or explain the testimony given by a witness on his direct examination. . . ." But, "while cross-examination is a basic right, it is subject to reasonable regulation by the court in the interest of an orderly and expeditious trial." [*Id.* at 520 (citations omitted).]

In *United States v. Stamp*, 147 U.S.App. D.C. 340, 458 F.2d 759 (1971), *cert. denied*, 406 U.S. 975, 92 S.Ct. 2424, 32 L.Ed.2d 675 (1972), the court observed that

it is the trial judge's duty to see that the evidence is presented to the jury in as orderly and intelligible a manner as possible. To accomplish these ends the trial judge in limiting cross-examination must necessarily be entrusted with a great degree of discretion. [*Id.* at 354, 458 F.2d at 773, *citing, e. g., Baker v. United States*, 131 U.S.App.D.C. 7, 401 F.2d 958 (1968); *cf. Springer v. United States*, D.C.App., 388 A.2d 846 (1978).]

---

11. We similarly reject appellant Waller's assignment of error to the trial court's alleged failure to specifically instruct the jury that intent is an essential element of assault, where one is charged with assault with intent to commit robbery while armed. He failed to object below, thus resolution of this contention is governed by the plain error standard. *Watts v.*

*United States*, D.C.App., 362 A.2d 706 (1976) (en banc). Examination of the court's instruction, which mirrored District of Columbia Bar Association, Criminal Jury Instructions for the District of Columbia, No. 4.13 (2d ed. 1972), leads us to conclude that no error was committed, plain or otherwise.

In the instant case, appellant Gaskins sought neither to contradict nor to modify the testimony of the three government identification witnesses. As most, it can be said, by resort to liberal interpretation, that he sought to explain; to apprise the jury that the witnesses had implicated only his codefendants and had provided pretrial descriptions exculpating him. Balanced against this was the trial court's duty to insure orderly presentation of evidence. We note that in limiting cross-examination here, the trial court did not preclude appellant Gaskins from calling witnesses Reid, Williams and Mack in his case-in-chief.[12] Appellant Gaskins' failure to do so is inconsistent with his instant assertions of prejudice.[13] We find no abuse of the trial court's discretion.[14]

Appellants' convictions are

*Affirmed.*

12. Appellant Gaskins' reliance on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) is misplaced. There, petitioner was tried for murder, and called as a witness one McDonald, who had made, but later repudiated, a written confession to the killing. McDonald had also on three occasions orally admitted committing the murder for which petitioner was on trial. At trial, petitioner was prohibited from cross-examining McDonald by Mississippi's common law voucher rule, which proscribed impeachment of one's own witnesses. Petitioner was held to vouch for McDonald's credibility, and was stuck with the latter's responses to his questions. The Court reversed, holding that application of the voucher rule denied petitioner a fair trial. There, cross-examination had been cut off *in limine*, on the issue of McDonald's credibility. In the instant case, appellant was denied only the opportunity to cross-examine government witnesses on a topic not discussed on direct examination.

13. Appellant Gaskins contends that he was prejudiced by the trial court's allegedly erroneous restriction of cross-examination because he was positively identified by only one of the eight surviving victims of the crime, witness Lena M. Hunter. This assertion ignores the fact that appellant Gaskins was implicated prior to trial by appellant Patterson, and at trial by Channeta Patterson (*see* note 2, *supra*). It ignores also the testimony of Metropolitan Police Detective Otis Fickling, who told the jury that appellant Gaskins had been hiding at the time of his apprehension, and who recalled that after having been advised of his rights and informed that two other subjects had been arrested, appellant Gaskins replied, "there was [*sic*] more than three people involved in this homicide. That shows you what you know about your case."

14. Appellant Patterson contends individually, and without citation to any authority, that the trial court erred in failing, sua sponte, to find him incompetent to stand trial. We have examined this contention and find it entirely without merit.