**UNITED STATES of America, Appellee,**

v.

**Antonio Gaudino VARGAS et al.,
Defendants-Appellants.**

No. 78–1502.

United States Court of Appeals,
First Circuit.

Argued May 10, 1979.

Decided Sept. 24, 1979.

Hector M. Laffitte, Hato Rey, P.R. with whom Laffitte & Dominguez, Hato Rey, P.R., on brief, for defendants-appellants.

Cynthia L. Attwood, Dept. of Justice, Washington, D.C., with whom, Julio Morales Sanchez, U.S. Atty., San Juan, P.R., Drew S. Days, III, Asst. Atty. Gen., and Walter W. Barnett, Dept. of Justice, Washington, D.C., on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, DEVINE, District Judge.*

BOWNES, Circuit Judge.

Defendants-appellants, three Puerto Rican police officials, appeal from an order of the district court denying their motion for a new trial alleging that one of the jurors, Luis A. Colon Torres, had failed to answer applicable voir dire questions that would have disclosed bias or prejudice and was mentally incompetent.

Defendants were convicted of violating 18 U.S.C. § 242[1] by beating and assaulting one Tadeo Torres Burgos during an investigation of a murder case. Shortly after the verdict was returned and within the prescribed time limit defendants moved for a

---

* Of the District of New Hampshire, sitting by designation.

1. 18 U.S.C. § 242 provides:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

new trial[2] alleging that juror Colon Torres deliberately concealed information about crimes of which he had been accused by failing to answer truthfully certain voir dire questions asked by the court preparatory to empanelling the jury. Appellants allege that the truthful answers to the questions would have revealed bias or prejudice against Puerto Rican policemen by the juror causing them to exercise a peremptory challenge. The voir dire questions were:[3]

Have you or anyone in your family ever participated in a criminal case as a defendant, a witness for the defense or in some other capacity?

Have your or anyone in your family ever been the victim of a crime or participated in a criminal case as a complainant, a witness for the government or in some other capacity? Have you or your family ever participated in a criminal case as a defendant, a witness for the defense or in some other capacity?

I would like to ask you, have your or any member of your family ever been intervened with by the Police of Puerto Rico?

Have any of you of any of your close relatives or friends ever been involved in an incident with the Police of Puerto Rico? Is there any of you who may have any ill feelings against the Police of Puerto Rico?

Can you think of any other matter which you should call to the Court's attention which may have some bearing on your qualifications as a juror or which may prevent you rendering a fair and impartial verdict based solely upon the evidence and my instructions to you as to the law?

The motion was referred to the United States Magistrate who conducted a hearing over a period of three days. The following rather unusual facts were developed at the hearing. The juror, Colon Torres, was arrested in 1967 on a charge of grand larceny, and in 1976 on a charge of larceny by trick. The grand larceny charge was dismissed after Colon Torres was found incompetent to stand trial. He had been admitted to the Hato Rey Psychiatric Hospital on October 31, 1967, upon recommendation of the San Juan Superior Court pending his trial for grand larceny. On November 31, 1967, he was found to need indefinite hospitalization. A psychological evaluation concluded that "the over-all picture was suggestive of schizophrenic reaction." He was found to be mentally incompetent and in need of further hospitalization as of March 11, 1968. Colon Torres was discharged from the mental hospital on September 30, 1968, eleven months after his admission. His discharge summary states.

By June 1968 patient started to realize why he was here after being informed by his brother. At the time he had no recollection for the symptoms that brought admission and he also claimed total amnesia for the deeds he was accused of. Patient became friendly, cooperative, coherent and denied hallucinations and delusions were not elicited. Improvement progressed and on September 23, 1968 he was considered to be mentally competent.

The 1976 charge of larceny by trick for which he was arrested was dropped because, at the preliminary hearing, the money allegedly taken ($1,050) was returned. The arresting officer, Andres Mateo Rodriguez, testified at the hearing that he had known Colon Torres for about five years and there was no animosity between them.

**2.** Rule 33 provides:

The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

**3.** There is no claim that the juror was unable to understand English.

The officer also testified that Colon Torres for several years had assisted him and other police officers prepare their income tax returns. There was also testimony by the police that Colon Torres had helped organize the Police Athletic League, was a frequent visitor at the Orocovis Police Station, and even was consulted by the police and made recommendations concerning potential candidates for the police force. Officer Mateo further testified that he considered Colon Torres to be a good friend and had no knowledge of any ill feelings, prejudice or dislike towards the police generally or himself personally.

Colon Torres was represented by counsel at the hearing and invoked the fifth amendment as to any questions concerning his failure to answer the voir dire questions, the arrests and charges against him in 1967 and 1976, his hospitalization, and whether he had received any psychiatric treatment since his discharge from the mental hospital in September of 1968. He did testify, however, that his close personal relationship with Officer Mateo and other police officers was not altered by his arrest in 1976, and that he was not prejudiced against the police generally.

It was the magistrate's opinion that the mental state Colon Torres exhibited as a witness at the hearing "did not reveal any incompetency or any impediment to his being a juror," and that there was no evidence that his mental state at the hearing was any different from that as a juror. The magistrate noted that the defendants presented no evidence as to bias or prejudice except the arrest record.

The district court reviewed the transcript of the hearing and the magistrate's findings and held that there was no showing of prejudice against the defendants as policemen. It specifically found, "the evidence, at least, refutes any allegation of bias injurious to defendants' rights to a fair trial." The district judge accepted the magistrate's findings as to mental competency.

Our review is bottomed on the abuse of discretion standard. "Motions for new trial are directed to the trial court's discretion." *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). *See also Sawyer v. Mullaney*, 510 F.2d 1220, 1221 (1st Cir. 1975); *United States v. Zannino*, 468 F.2d 1299, 1303 (1st Cir. 1972), *cert. denied*, 410 U.S. 954, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973).

 We first address the issue of bias or prejudice. The established rule is that the party seeking the new trial because of nondisclosure by a juror must prove actual bias or prejudice.

Where an attack is made upon the integrity of the trial by reason of alleged misconduct on the part of a juror in failing to disclose information pertinent to the issue of prejudice, the defendant's burden of proof must be sustained not as a matter of speculation, but as a demonstrable reality.

*United States v. Whiting*, 538 F.2d 220, 223 (8th Cir. 1976). *See also United States v. Crockett*, 514 F.2d 64, 69 (5th Cir. 1975); *United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir. 1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788; *Daniels v. United States*, 123 U.S.App.D.C. 127, 357 F.2d 587 (D.C. Cir. 1966); *Carpenter v. United States*, 69 App.D.C. 306, 307, 100 F.2d 716, 717 (D.C. Cir. 1938).[4]

---

**4.** Appellants on pages 9 and 10 of their brief rely on a per se rule purportedly set forth in "8A Moore's Federal Practice, Rules of Criminal Procedure, Section 2403, page 2428" quoted as follows:

"What happens when a question is effected and a juror fails to answer, or answers incorrectly? The rule formulated by the District of Columbia Circuit is that a new trial should generally be ordered if a juror gives a purposely incorrect answer or deliberately conceals a material fact which, if disclosed would probably have induced counsel to exercise a peremptory challenger would have resulted in the juror's disqualification or discharge for cause." *Ryan v. United States*, 89 U.S.App.D.C. 328, 191 F.2d 779. Appellant Br. at 10.

Quite aside from the fact that paragraph *24.-03* of Moore's which has to do with voir dire examination does not contain page 24–28 and we cannot find the quoted paragraph at all in

A recent bank robbery case in the Second Circuit involved the same issues as presented here. In *United States v. Mulligan*, 573 F.2d 775 (2d Cir. 1978), *cert. denied*, 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120, a juror failed to disclose that she had been arrested for felonious assault. After the trial, the same juror wrote a long and effusive letter to the prosecutor. Appellant, a former New York City policeman, claimed that she was biased against New York City policemen and that the letter showed she was mentally incompetent. After conducting an interrogation of the juror with counsel present, the district judge found that the juror did not intentionally lie on the voir dire and denied the motion for a new trial. In upholding the district court, the Second Circuit stated: "Although the question of juror impartiality is a mixed question of law and fact, the trial court's findings of impartiality will be set aside only where 'manifest' prejudice to the defendant has been shown." [5] *Id.* at 778.

We rule that the district court did not abuse its discretion in finding that there was no showing of bias or prejudice against the police generally and these individual defendants specifically.

 The next question is whether a new trial is required because of the alleged mental incompetency of the juror, or more accurately, because of his eleven month confinement in a mental hospital from October of 1967 to September of 1968. Appellants seize on a remark from *Peterman v. Indian Motorcycle Company*, 216 F.2d 289 (1st Cir. 1954), as the basis for a per se rule that confinement in a mental institution means automatic disqualification as a juror. In that case, we held that the district court did not abuse its discretion in denying a motion for a new trial because of alleged mental incompetency of a juror where the decision, made without a hearing, was based on the movant's offer of proof. We noted:

> Referring to the inadequacy of the offer of proof, the judge commented that it contained no suggestion that the juror was insane or had at any time been confined in a sanitarium "or so incapacitated that he did not perform as adequately as many people do ordinary occupational tasks."

*Id.* at 293.

This is far from holding, as appellants urge, that confinement of an individual in a mental hospital automatically disqualifies him from serving as a juror at any subsequent time. Such confinement, if disclosed or alleged, would of course, require full inquiry. But

> [i]t is well settled that the only clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service requires setting aside a verdict. And only strong evi-

paragraph 24.03, the reliance on *Ryan* is misplaced. In *Ryan*, the issue was whether there should have been a new trial because of conversations between several members of the jury and the prosecutor during recesses in the trial. It was not a voir dire situation, although the court by way of dictim at 331, 191 F.2d at 782 did quote from *Carpenter v. United States*, 69 App.D.C. 306, 307, 100 F.2d 716, 717 (D.C. Cir. 1938), that

> it is the duty of every juror to answer questions affecting his qualifications honestly, and if he conceals a material fact which, if disclosed, would probably have induced counsel to strike him from the jury, a new trial should ordinarily be ordered.

This, of course, is only half the rule. The other half, explicated in *Turner v. United States*, 135 U.S.App.D.C. 59, 61, 416 F.2d 815, 817 (D.C. Cir. 1969), is whether there has emerged from the failure to disclose "an imputation of such bias and prejudice as to require a new trial."

This quote is followed by a *cf.* footnote to *Ryan*.

5. *But see United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979), where a juror in a heroin possession and distribution case failed to disclose that his two sons, who were heroin addicts, were serving long prison terms for robbery and murder committed in an effort to obtain heroin. The district court did not interrogate the juror or hold any kind of a hearing after the information was disclosed, but denied the motion for a new trial on the grounds that the juror could not have influenced the jury's verdict. The Ninth Circuit reversed, stating: "Regardless of the reason for Collins' nondisclosure, we conclude that his sons' tragic involvement with heroin bars the inference that Collins served as an impartial juror." *Id.* at 517.

dence that it is likely that the juror suffered from such incompetence during jury service will justify an inquiry into whether such incompetence in fact did exist.

*United States v. Dioguardi,* 492 F.2d 70, 78 (2d Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 45 L.Ed.2d 112 (1974). In the light of the magistrate's specific finding, we cannot say that the district court abused its discretion in determining that the juror was mentally competent at the time of trial.

■■■ Finally, we consider appellants' claim that the effect of the nondisclosure was to deny them their basic right to exercise a peremptory challenge. Although the importance of peremptory challenges in criminal proceedings has long been recognized, they have not, at least as yet, acquired a constitutional footing.

> The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. *See Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011. Although "[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges," *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154, nonetheless the challenge is "one of the most important of the rights secured to the accused," *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414 38 L.Ed. 208. The denial or impairment of the right is reversible error without a showing or prejudice, *Lewis v. United States, supra* ; *Harrison v. United States,* 163 U.S. 140, 16 S.Ct. 961, 41 L.Ed. 104; *cf. Gulf, Colorado & Santa Fe R. Co. v. Shane,* 157 U.S. 348, 15 S.Ct. 641, 39 L.Ed. 727. "[F]or it is, as Blackstone says, an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose." *Lewis v. United States, supra,* 146 U.S. at 378, 13 S.Ct. at 139.

*Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). There is little doubt that if the court or prosecution deprives a defendant of his right to the effective exercise of peremptory challenges, it would, without more, be grounds for a new trial. *Harrison v. United States,* 163 U.S. 140, 16 S.Ct. 961, 41 L.Ed. 104 (1896); *Gulf, Colorado & Santa Fe R. Co. v. Shane,* 157 U.S. 348, 15 S.Ct. 641, 39 L.Ed. 727 (1895); *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). But that is not the situation here. There is no claim that either the court or prosecution knew or should have known of the juror's prior involvement with the police or his mental history. If the juror had answered the questions fully he, undoubtedly, would have been subjected to more intensive interrogation by the court and the full facts disclosed. We do not treat lightly the concealment of information by a prospective juror, but the jury system, despite its vital role in our jurisprudence, is not perfect. It is based on the assumption that a person's guilt or innocence can best be determined by twelve persons representing a fair cross section of the community. We try to eliminate bias and prejudice by juror questionnaires and voir dire examination. There is no way, however, of absolutely insuring that a prospective juror will answer honestly the questions put to him. The secrecy within which juror's deliberations are necessarily cloaked prevents us, in most cases from ever finding out the reasons and motivations for a verdict. When an individual betrays his trust, the only recourse is to try to determine, as was done here, whether there was such a showing of bias or prejudice as to require a new trial. This protects, insofar as is humanly possible, the integrity of the jury trial. A new trial would be a windfall for a defendant, but it would have no prophylactic or deterrent effect on prospective jurors.

*Affirmed.*