**TOWN CENTER MANAGEMENT CORPORATION, Appellant,**

v.

**Roy CHAVEZ, Appellee.**

**No. 9805.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1976.

Decided May 3, 1977.

---

Kenneth J. Loewinger, Washington, D. C., for appellant.

B. Michael Rauh and Martin J. Shulman, Washington, D. C., for appellee.

Before FICKLING * and KERN, Associate Judges, and REILLY, Chief Judge, Retired.

KERN, Associate Judge:

In September 1969 appellee Chavez returned to the furnished apartment in Town Center Plaza Apartments he was renting under a written lease [1] from appellant Town Center Management Corporation (Town Center) and discovered that the management had placed a new lock on his door and removed all his clothing and personal possessions to the building's storeroom. Advised by the resident manager, Mr. Sweeney, that he could have his belongings but not his apartment, appellee consulted his attorney and then commenced in the United States District Court litigation which has culminated in the instant appeal more than seven years after the lockout took place.

The complaint filed on September 24, 1969 in the District Court [2] alleged that on September 2 appellee had given Town Center written notice that he intended to vacate (to move to another city) on or before October 1; and that without notice he had been evicted on September 23 when appellant's agents entered his apartment, removed all his belongings and placed on the door a new lock to which only Mr. Sweeney had a key. Mr. Chavez sought damages [3] and an injunction permitting him to return to his apartment. Denied a temporary restraining order restoring him to possession, he took an emergency appeal to the federal circuit court. That court issued an order stating that Mr. Chavez "has made a rea-

sonably substantial showing of probable success on the merits," summarily reversed the District Court, and granted Mr. Chavez permission, pending determination of his complaint, to enter his apartment. On September 30 Mr. Chavez, accompanied by his attorney, was given access to his apartment after a wait of almost two hours. His property was returned to him and he packed and vacated shortly before midnight.

Town Center not only filed an answer to appellee's complaint in the District Court, but also asserted a counterclaim against him, alleging he had "in a wanton and reckless manner commenced to agitate . . . and interfere with the other tenants" to induce them to breach their contracts with Town Center, and seeking both compensatory and punitive damages against Chavez. Depositions of Chavez and Sweeney were taken and pretrial held; District Judge Gasch dismissed the counterclaim and certified the case to the Superior Court for trial.

Trial was held October 20, 1972. Mr. Chavez and Mr. Sweeney testified for the plaintiff; the defendants called no witnesses in their defense. There was virtually no dispute about the course and chronology of events leading up to the lockout.

In July 1969 there had been a breakdown of the air conditioning in a part of the Town Center Plaza and some tenants, including Mr. Chavez, after several meetings and discussions deducted a percentage of their rent from their August rent payments as an offset.

Town Center, after consulting with its attorney, promptly returned appellee's re-

---

* Associate Judge Fickling participated in oral argument but died on March 6, 1977.

1. The term of the lease executed in June 1968 was for one year with the right to remain thereafter on a month-to-month tenancy which could be terminated on 30 days notice.

2. The complaint named as defendants (1) Town Center Management Corporation, the lessor and managing agent of the Town Center Plaza Apartments, (2) Matthew Sweeney, the lessor's

resident property manager, and (3) Charles Bressler, an alleged owner of Town Center Plaza. Judgment was ultimately awarded against Town Center and Matthew Sweeney. Only Town Center has appealed.

3. The complaint sought $50 for moneys expended by appellee as a result of the lockout and punitive damages in the amount of $100,-000, together with whatever other damages would be "just" compensation.

duced August check with an explanation that it was not "acceptable."

On September 2 Mr. Chavez gave notice that he intended to vacate his apartment by October 1.

On September 10 Mr. Chavez tendered a check in an amount representing his August *and* September rent, but again withholding the amount previously decided upon, and also deducting his security deposit; in addition, Mr. Chavez attached a cover letter which explained the deductions he had made and invited discussion concerning the amount of the deductions.

Town Center deposited this check on September 12 and Mr. Sweeney locked Mr. Chavez out of his apartment on September 23.

There was documentary evidence introduced at trial consisting of (a) the lease, (b) Mr. Chavez' September 10th check with the words "August and September Rent" on its face, which reflected that it had been presented to the drawee bank by Town Center and had been paid on September 12, and (c) the letter from Mr. Chavez to Town Center which accompanied that check.

In his lengthy memorandum opinion filed April 2, 1975, the trial judge found that Town Center's acceptance of the September 10th check, (a) after a discussion among its employees (including Sweeney) about the deduction and its surrounding circumstances, (b) without any protest, demand for further payment, or any communication with appellee, and (c) pursuant to the specific advice of its attorneys, constituted an accord and satisfaction. The court thus found the lockout wrongful because appellee "had at the time he was locked out of the premises fully paid his rent." (Record at 231.)

The court further found that Mr. Chavez "was singled out for lock-out action by the defendants, pursuant to and with the advice of counsel . . . apparently for the purpose of making an example of him and thereby discouraging other tenants from taking similar action and making similar reductions." (Record at 233–34.) In addi-

tion, the trial judge's conclusion that appellee was "singled out" was supported by his finding that appellee was "somewhat of a leader among the tenants of the building in which his apartment was located." (Record at 234.)

The court finally concluded that the defendants' action in locking [Chavez] out of the premises after having accepted [his] check constituted malicious action on their part in that the action in locking [him] out was taken by and with the advice of counsel . . . so that the Court finds that the defendants acted . . . with the knowledge that they had waived their right to do so by accepting [his] tendered rental payment for the months of August and September of 1969 [and that the] defendants' actions were even more malicious for their purpose was to discourage similar action by other tenants in making reductions from the rental otherwise due. . . . [Record at 234–35.]

The court found that appellee's actual expenses incurred as a result of the lockout (for hotel rooms, meals and personal items) totaled $35.51 and that appellee "sustained great mental suffering, inconvenience, and discomfort as a direct result of the defendants' wrongful, unlawful, and malicious action." (Record at 235–36.)

The court awarded *actual* damages of $10,000 and *punitive* damages of $5,000, and judgment was entered against Sweeney and Town Center "in the total sum of $15,-000.00, plus costs and reasonable attorneys' fees." Subsequently the judge amended the order to reflect his original intention to award $10,000 actual damages and $10,-863.17 punitive damages. Included in the latter figure were $5,328 for attorneys' fees and $535.17 for out-of-pocket expenses of the lawsuit. (Record at 255–57.)

Appellant launches four main lines of attack on the judgment awarded. First, it argues that the trial court kept the case under advisement from October 20, 1972 until April 2, 1975 before issuing its findings and conclusions and that this inordi-

nate delay amounts to "plain reversible error."

■ It seems beyond dispute that holding a case under advisement after trial for almost two and a half years constitutes an aberration of the judicial system. However, we decline to reverse the judgment of the trial court here because we conclude it quite unlikely in this particular case that the delay between the conclusion of the trial and the rendition of the decision affected the ability of the trial judge to make the necessary findings of fact.

In the first place, there were only two witnesses testifying at the trial and the basic facts were not in dispute. Moreover, the pretrial order contained a factual statement of the case which was agreed to by both parties. In addition, there were three written documents received in evidence which encompassed the events leading to the suit. And finally, the record reflects that the judge took his own notes during the trial. Given the relative simplicity of the case, we believe that the facts were sufficiently "memorialized" in the pretrial order, in the documents admitted into evidence, and in the trial judge's notes, that the extraordinary delay in deciding the case did not undermine the trial judge's ability to find the facts.

Moreover, this conclusion is strengthened by the fact that our examination of the transcript discloses that there was ample support for the trial judge's findings.[4]

Furthermore, although primary responsibility for the delay must rest with the trial judge, we are constrained to point out that the attorneys for the parties also had an obligation to the judicial system as well as their clients to see that the case was resolved expeditiously. In comparing the conduct of the two parties and their attorneys in this respect, we note that Mr. Chavez, through his attorney, wrote the trial court on three separate occasions and telephoned once, requesting a decision in the case. A copy of each letter was sent to the opposing attorney. The record does not reflect, however, any response from the opposing attorney. After the written requests produced no decision from the court, Mr. Chavez' attorney moved for a new trial on the ground, among others, that his case had been under advisement for almost two and a half years. Appellant did not respond to this motion.[5] Finally, some three weeks after the filing of the motion, the court issued its memorandum opinion. Thereupon, Mr. Chavez' attorney, again without any response from appellant, withdrew by praecipe his motion for a new trial. In light of appellant's unbroken silence during the long delay, we do not believe that the "sound administration of justice," as appellant *now* urges,[6] requires reversal and remand for a new trial in 1977, seven and one-half years after the incident took place and the complaint was filed.

■ Appellant's second line of attack is directed at the court's conclusion that the eviction was wrongful. Since the rental obligation for which the appellee's check was tendered was not an unliquidated debt, Town Center argues there could be no ac-

---

4. Appellant contends there was no evidence in the record to support the trial judge's finding that Mr. Chavez was "somewhat of a leader among the tenants." The testimony, however, was sufficient to support that finding. It showed that Mr. Chavez was a member of the tenants council of the apartment complex; that he attended and participated in meetings with other tenants, including the meeting at which it was decided that a deduction of 10% would be made from the rent because of the air condi-*tioning breakdown*; that the tenants council distributed leaflets urging the tenants to participate in the rent withholding; and that Mr. *Chevez was one of the 18 tenants who actually did tender a reduced rent payment.*

5. Appellant argues that this motion for a new trial had to be granted because it was unopposed, citing Super.Ct.Civ.R. 12–I(e). We note, however, that the Rule says that the trial judge "*may* treat the [unopposed] motion as conceded." (Emphasis added.) We cannot find that the trial judge erred in *not* interpreting appellant's inaction as a concession.

6. After the trial judge handed down his decision, appellant broke its silence and made a motion for a new trial. Even then, however, appellant did not cite the delay as a ground for its motion.

cord and satisfaction by its acceptance of the check. The rule, however, is that an accord and satisfaction may be found *either* when the amount due is unliquidated *or* honestly in dispute. *Ansberry v. Harrah*, 65 App.D.C. 80, 80 F.2d 381 (1935); *Laganas v. Installation Specialties*, D.C.App., 291 A.2d 187 (1972). Although appellant does not contest this point, we note that there is sufficient evidence from which the trial judge could conclude that there was an honest dispute as to the amount of the offset, if any, to which Mr. Chavez was entitled as a result of the breakdown of the air conditioning in July.

Appellant next challenges the court's award of $10,000 to appellee as compensatory damages. Appellant contests this award with the argument that the tenant should not have been allowed to recover a greater amount in compensatory damages than what he claimed in his complaint and in the pretrial order entered by the District Court Judge pursuant to Rule 16 of the Federal Rules of Civil Procedure.[7]

The complaint clearly alleged that the plaintiff had been "grievously injured and inconvenienced by Defendants' willfull and malicious actions" and requested "such further relief . . . that may seem just and proper to this Court." The broad wording of the complaint would appear to encompass the relief ultimately granted by the trial judge in his award of compensatory damages of $10,000. However, the pretrial order entered in the case stated:

PLAINTIFF asserts that he was unlawfully denied possession of Apartment 712 at defendants' premises from September 23 to September 30, 1969;

That as the result of defendants' actions in barring him from his apartment and removing his personal possessions, he sustained the following

SPECIAL DAMAGES:

| | |
|---|---:|
| Hotel room ($10.76 + $8.40) . . . | $ 19.16 |
| Purchase of necessary toiletries . | 5.53 |
| Purchase of food . . . . . . . . . . . . | 5.85 |
| Attorney's fee to date, estimated | 300.00 |
| | $330.54 |

Plaintiff asks $330.54 compensatory damages and $100,000 punitive damages, plus costs. [Record at 202–03.]

Thus, regardless of the "catch-all" prayer for relief in the complaint, the pretrial order expressly *limited* appellee's claim for compensatory damages to the itemized special damages. The binding effect of such a limitation was discussed by this court in *Redding v. Capitol Cab Co.*, D.C.App., 284 A.2d 54, 55 (1971):

Rule 16 is not vague. The purpose of the pretrial conference is to define the claims and defenses of the parties *in order to narrow the issues*, eliminate unnecessary proof and lessen the opportunity for surprise thereby expediting the trial. *Parties are bound by the pretrial order which, in the words of the rule, "limits the issues for trial" and "such order when entered controls the subsequent course of the action."* The parties may not later inject an issue not raised at the pretrial conference and *this rule can be equally applicable to an attempt to inject an element of damages not claimed or disclosed in the pretrial proceedings.* [Footnotes omitted, emphasis added.]

We are mindful, of course, that Rule 16 "does not contemplate or require that rigid adherence to the pretrial order must always

---

7. Fed.R.Civ.P. 16 provides in pertinent part:
 In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider (1) The simplification of the issues;

 . . . . .

 (6) Such other matters as may aid in the disposition of the action.
 The court shall make an order . . . which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered con-

trols the subsequent course of the action, unless modified at the trial to prevent manifest injustice. . . .
Rule 16, with the exception of its final sentence dealing with a pretrial calendar, is identical to Super.Ct.Civ.R. 16. In determining the binding effect of the pretrial order on the subsequent trial of the case in Superior Court, we attach no significance to the fact that it was entered by the U.S. District Court Judge pursuant to the Federal Rules.

be exacted," *Clarke v. District of Columbia*, D.C.App., 311 A.2d 508, 511 (1973), and that the binding effect of the pretrial order is always subject to relaxation at the discretion of the trial judge. *Id.; Redding v. Capitol Cab Co., supra.* After reviewing the record, however, we conclude that the trial court's award of $10,000 compensatory damages was an abuse of discretion because appellant was never given a fair opportunity to contest the issue of the propriety of an award of compensation for the "mental suffering, inconvenience, and discomfort" which appellee suffered as a result of the wrongful lockout. Specifically, appellant had no opportunity to contest the damages, other than specials, suffered by appellee as a result of the lockout because it was misled into believing the issue of such damages was not in the case. Indeed, the record reflects that appellee himself considered the pretrial order binding and did not intend his proof to go beyond it. The following exchange at trial indicates that both parties were aware of the limits of the pretrial order:

Q. Now, Mr. Chavez can you tell us, what happen[ed] to you physical[ly] and emotionally during this seven day period, the 23rd to the 30th of September in the year of 1969.

MR. MILLER: Object, there is no prelim in the pre-trial order for that.

THE COURT: Objection will be sustain[ed].

BY MR. RAUH: Your Honor, I would like to be heard on that. This again—

THE COURT: You have no claim for physical or emotional injury.

MR. RAUH: *We are not making a claim for physical or emotional injury.* We are making a claim the attitude for this landlord and what they did to this young man, as a result of purposely locking this man out of his apartment, with no reason whatsoever to validate the law. [*sic*]

MR. MILLER: Objection.

THE COURT: Objection [Sustained]. [Record at 43; emphasis added.]

Furthermore, during closing argument appellee mentioned compensatory damages only once in passing:

THE COURT: Well, I am going to deny the motion to dismiss. The next question is that I have is what . . . is your basis for punitive damages.

MR. RAUH: Alright, Your Honor, I don't think it is any question about the three little items of actual—out of the pocket expenses. I think if I can remember they all totalled up to around $30.00 which is the compensatory part. Now, the punitive damages—the Court— [Record at 125.]

Appellee argues, however, that notwithstanding these clear indications that he did not seek compensation for his mental suffering, Super.Ct.Civ.R. 54(c) requires that the trial judge "grant the relief to which the party in whose favor [the judgment] is rendered is entitled, even if the party has not demanded such relief in his pleadings." Since there was evidence in the trial which would support the court's award of damages for appellee's mental suffering, inconvenience, and discomfort, appellee contends that the pretrial order should not preclude the relief. We agree with *Rosden v. Leuthold*, 107 U.S.App.D.C. 89, 274 F.2d 747 (1960), cited by appellee, that Rule 54(c) should govern when there is *no* conflict with the purpose of the pretrial procedure prescribed by Rule 16. We conclude, however, that allowing recovery of compensatory damages under the circumstances here would violate the purpose of Rule 16 as set forth in *Redding v. Capitol Cab Co., supra.*

In our view, then, the instant case presents the question whether the trial judge abused his discretion in awarding compensation for damages *not* claimed in the pretrial order (a) where appellee did not attempt to amend the pretrial order to include the issue of those damages, (b) where that issue was not expressly or impliedly tried by the parties,[8] (c) where appellant

---

8. Since the issue was *not* tried with the express or implied consent of the parties, the case *Seek v. Edgar*, D.C.App., 293 A.2d 474 (1972), is inapposite. This court stated that Rule 16

objected on the ground of surprise to trial of that issue, and (d) where appellee expressly disavowed any attempt to try the issue. We conclude that under these circumstances appellant was denied the opportunity to litigate this item of damages and the award cannot stand. *See Redding v. Capitol Cab Co., supra.* Rather, compensatory damages should have been awarded only for the $35.51 out-of-pocket expenses which were contested and proved at trial.[9].

Appellant's fourth major line of argument is aimed at the award of punitive damages. It contends its lockout of appellee Chavez was a good faith response to his refusal to pay his full September rent before departing from the city. However, appellant's argument rests on the premise that as late as September 23 when it locked out Chavez it was still arguable whether he had paid his September rent. The trial court, however, expressly found upon all the evidence that appellant "acted in locking out [Chavez] with the knowledge that they had waived their right to do so by accepting [Chavez'] tendered rental payment." (Record at 234–35.) Thus, on September 23, the date of the lockout, appellant knew Mr. Chavez had paid his rent in full and that he was entitled to the enjoyment of his apartment until the month's end.

 Appellant also urges that since it consulted its attorney before effecting the lockout of appellee on September 23 the malice necessary for an award of punitive damages was lacking. Put another way, appellant urges that it acted in good faith after seeking advice of counsel and should not now be punished for the bad advice it received. The trial court found, however, that appellant "singled out" Chavez "apparently for the purpose of making an example of him and thereby discouraging other tenants . . . from making similar reduc-

tions with respect to rent." (Record at 233–34.) Appellant's contention amounts then to the assertion that one acting with legal advice, even if for an improper purpose, should be insulated from liability for punitive damages. We disagree. Acting after consulting an attorney does not *necessarily* preclude an award of punitive damages. *See Franklin Investment Co. v. Homburg,* D.C.App., 252 A.2d 95, 99 n. 4 (1969); *Columbia Finance Co. v. Worthy,* D.C.Mun. App., 141 A.2d 185, 187 (1958). *See generally* 22 Am.Jur.2d *Damages* § 253. Given the motive with which the court found appellant had acted in locking out Chavez, and the acceptance by Town Center of his check 11 days before locking him out without any notice, the consultation with its attorney was no more than one factor for the trial judge to consider in determining whether the requisite malice was present. *Columbia Finance Co. v. Worthy, supra. See also Fizzell v. Meeker,* 339 F.Supp. 624, 629 (W.D.Mo.1970). The court did not err in rejecting the defense.

 In our view, appellant's lockout of Chavez when his rent was fully paid, in an effort to intimidate the other tenants, constitutes the very sort of malicious conduct which will support an award of punitive damages, *see American Home Life Insurance Co. v. Cerrone,* 43 App.D.C. 508, 512 (1915); *Columbia Finance Co. v. Worthy, supra.* Where there is a legal foundation in the record for an award of punitive damages, it is within the discretion of the trier of fact to make the award. *Harris v. Wagshal,* D.C.App., 343 A.2d 283, 288 n. 13 (1975). We find no abuse of that discretion here.

Appellant also contends that the court's award to appellee of his counsel fees violates the District's statutory ban against awarding attorneys' fees as costs to the winning party in a lawsuit. D.C.Code 1973, § 15–701(a). Our review of the record indi-

must be "read in the light of" Rule 15(b), which provides in pertinent part that:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . . [Emphasis added.]

9. Appellee apparently abandoned at trial his $300.00 claim for attorneys' fees as an item of compensatory damages.

cates that the contention is not well taken. Rather than awarding attorneys' fees as costs,[10] the court merely considered attorneys' fees as one factor in its final assessment and imposition of punitive damages.[11] While this jurisdiction is in the minority in allowing attorneys' fees to be considered as an element of punitive damages, *see* Annot., 30 A.L.R.3d 1443 (1970), appellant does not challenge (Reply Brief at 5) the District of Columbia cases sanctioning the practice. *See Afro-American Publishing Co. v. Jaffe*, 125 U.S.App.D.C. 70, 83, 366 F.2d 649, 662 (1966); *Schlein v. Smith*, 82 U.S.App.D.C. 42, 45, 160 F.2d 22, 25 (1948); *Ballard v. Spruill*, 64 App.D.C. 60, 62, 74 F.2d 464, 466 (1934), *cert. denied*, 293 U.S. 625, 55 S.Ct. 349, 79 L.Ed. 712; 296 U.S. 575, 56 S.Ct. 130, 80 L.Ed. 406 (1935), and 302 U.S. 764, 58 S.Ct. 477, 82 L.Ed. 594 (1938); *Sankin v. 5410 Connecticut Avenue Corp.*, 281 F.Supp. 524, 568 (D.D.C.1968), *aff'd sub nom. Benn v. Sankin*, 133 U.S.App.D.C. 361, 410 F.2d 1060 (1969), *cert. denied*, 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970).

Given the particular circumstances here of seven years litigation through four

courts and the trial court's finding that appellant's conduct was malicious and wanton, we will not disturb the amount of punitive damages finally awarded.

■ Appellant finally argues that the court could not award punitive damages in this case because no evidence of the defendant's financial capacity was introduced. Appellant has cited no case to support its contention that such evidence must be introduced to support an award of punitive damages and the rule appears to be to the contrary. *Tri-Tron International v. Velto*, 525 F.2d 432, 438 (9th Cir. 1975); 25A C.J.S. *Damages* § 162(3), at 82. We therefore reject that contention.

We conclude that the award of punitive damages must stand but the award of compensatory damages in excess of the special damages found by the trial judge must be reversed.

*So ordered.*

---

**10.** We note that D.C.Code 1973, § 15–701 and the "American Rule," *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), would seem to bar any award by the court of counsel fees as an item of costs to the prevailing party in this suit.

**11.** The court first (Record at 237) entered judgment "in favor of the plaintiff [appellee] and against the defendants [appellant] . . . in the total sum of $15,000.00 [this amount was the total compensatory *and* punitive damages], plus costs and reasonable attorneys' fees." Thereafter, appellee filed a motion for award of attorneys' fees and costs (Record at 238), supported by an itemized statement (Record at 240). Appellee sought a total of $7,535.17 for professional services and expenses incurred in the prosecution of the suit.

Appellant filed an opposition to the motion (Record at 246), arguing that "the court has already awarded compensatory and punitive damages. The attorneys' fee either was included in that award or should have been included in that award. In either event, it should not now be taxed however as a separate item." (Record at 247.) Appellant acknowledged, however, citing *Afro-American Publishing Co. v. Jaffe*, 125 U.S.App.D.C. 70, 366 F.2d 649

(1966), that "one factor to be considered in assessment of punitive damages is the cost of litigation actually incurred but not included within costs taxable to the ordinary victor, the significant element being counsel fees."

The trial court finally entered an amendment order "to clarify" the original judgment and stated (Record at 255–57):

It was the intention of the Court to award the plaintiff actual damages in the amount of $10,000.00 plus punitive damages in the sum of $5,000.00 plus attorneys' fees and costs. Since the Court had no evidence before it of the amount of costs and reasonable attorneys' fees, the exact sum was left open for further findings. . . . [T]he Court finds punitive damages in favor of the plaintiff [appellee] against the defendants [appellant] in the sum of $10,863.17. In determining the amount of punitive damages to be awarded the Court included the sum of $5,328.00 for attorneys' fees and $535.00 out-of-pocket expenses.

Thus the amended order is consistent with appellant's contention that appellee's attorneys' fees should not have been a separate item of costs awarded a winning party but could be awarded as an element of punitive damages.