**Constance Lee COWDEN, Appellant,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.**

**No. 79–767.**

District of Columbia Court of Appeals.

Argued April 30, 1980.

Decided Dec. 4, 1980.

---

Louis S. Papa, Washington, D.C., for appellant.

John C. Swanson, Washington, D.C., for appellee.

Before NEBEKER, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellant brought a personal injury action against appellee as a result of a collision in which appellant, a pedestrian, was allegedly struck by a vehicle owned and operated by appellee. A jury, having heard the evidence, returned its verdict in favor of appellee. Asserting a defect in the composition of the jury, appellant appeals from the denial of a request for a new trial. For reasons set forth below, we reverse and remand for a new trial.

During the voir dire examination, appellee's counsel indicated that appellant's parents might be called as witnesses on behalf of the claimant. Identifying them by name and address, but not in person, he inquired whether any prospective juror was acquainted with them. There being no affirmative response, it was assumed that the answer was in the negative. The jury was impanelled shortly thereafter and a three day trial commenced. On the second day of

trial Mrs. Patricia M. Cowden, appellant's mother, testified for approximately one-half hour. Upon completion of her testimony, she remained in the courtroom as a spectator throughout the rest of the trial. The case was then submitted to the jury and a verdict in favor of appellee was returned. Immediately after the verdict was announced, the jury was polled. It is represented that for the first time Mrs. Patricia Cowden, during the poll, recognized one of the jurors, Ms. Gloria Freeman, as a person with whom she had periodic contact for about a year while employed in the same government agency. Counsel for appellant was immediately informed of this development and he, in turn, brought it to the court's attention. The court subsequently conducted two hearings. At the first hearing, the court sought to determine when appellant discovered the identity of Ms. Freeman,[1] while the extent of the relationship between appellant's mother and the juror was the subject of the second.[2] As stated, the court denied the request for a new trial.

■ Relying principally upon *Marvins Credit, Inc. v. Steward*, D.C.Mun.App., 133 A.2d 473 (1957), appellant contends that the denial of her motion for a new trial amounted to a deprivation of her constitutional right to a trial by an impartial jury. In that case, a juror had been a charge account customer of a retail store, the plaintiff in the action being heard, for a period of twelve years. Ultimately, she and her husband had suffered a judgment in favor of the store and had been the subject of garnishment proceedings. Despite questions during voir dire designed to elicit this

---

1. In effect, appellant testified that at no time during the course of the voir dire did she identify the name of or recognize any juror, and that it was not until her mother recognized Ms. Freeman after the jury had been polled that she became aware of the relationship between the two.

2. Ms. Freeman testified that she knew Mrs. Patricia Cowden, but not appellant; that she did not identify the name of the witness during voir dire; and that it was not until Mrs. Cowden took the stand that she recognized her.

Ms. Freeman further testified that she knew Mrs. Cowden from her place of employment. She stated that although she and Mrs. Cowden worked in different offices at National Airport, the two sometimes worked together. Ms. Freeman explained that Mrs. Cowden was responsible for reviewing all written work that would come from her office to Mrs. Cowden's supervisor and that all errors would be sent back to Ms. Freeman's office for correction. Ms. Freeman described the working relationship with Mrs. Cowden as "friendly."

kind of information, the juror remained silent. In addressing this question, we noted that the judicial response, as to the showing required to gain relief, has varied. Some courts have placed the burden on the complaining party to establish prejudice;[3] others—primarily because of the wide range of circumstances which may evoke this problem—have left this matter to the sound discretion of the trial judge, subject to review on a standard of clear abuse.[4] Still other jurisdictions, including the District of Columbia, follow the view that the complaining party need not affirmatively establish prejudice on the part of the juror in order to gain relief.[5] Thus, we said:

> We think that the rule to govern such situations may be summarized as follows: Full knowledge of all relevant and material matters that might bear on possible disqualification of a juror is essential to a fair and intelligent exercise of the right of counsel *to challenge either for cause or peremptorily.* It is the duty of a juror to make full and truthful answers to such questions as are asked, *neither falsely stating any fact nor concealing any material matter.* If a juror falsely represents his interest or situation or conceals a material fact relevant to the controversy and such matters, if truthfully answered, might establish prejudice or work a disqualification of the juror, the party misled or deceived thereby, *upon discovering the fact of the juror's incompetency or disqualification after trial,* may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, even though the bias or prejudice is not shown to have caused an unjust verdict, it being sufficient that a party, *through no fault of his own,* has been deprived of his constitutional guarantee of a trial of his case before a fair and impartial jury. [*Id.* at 476 (emphasis in original; footnote omitted).]

In attempting to distinguish this case from *Marvins Credit,* appellee emphasizes that the relationship in this instance involved a nonparty, appellant's mother; that the juror here did in fact truthfully respond to the question on voir dire, having not recognized the name of the witness, Mrs. Patricia Cowden, when the question was asked; and finally, that appellant has demonstrated no bias or prejudice on the part of the juror.

It is apparent that these contentions do not resolve the critical concern: the right of counsel to seek fair and impartial jurors on the basis of information received during voir dire. The underlying rationale of our approach—to grant relief without a showing of prejudice—is a recognition of the fact that it is difficult to identify and measure bias or prejudice. In most instances it would require considerable speculation to conclude that certain relationships or attitudes caused an unjust verdict. In this case, for example, the effect on the verdict, if any, resulting from the juror's acquaintance with appellant's mother, presents a difficult area of proof. Thus the decisive question in this matter is whether *appellant* discovered the juror's infirmity before the verdict. It is unquestioned that each party has an obligation to report the incompetency of any juror upon discovery. Here the trial judge conducted two post-trial hearings. Although he expressed skepticism that a witness could testify and observe the entire trial and not recognize the juror until after the verdict, he made no finding as to when appellant, as contrasted to her mother, discovered the circumstance. There is no finding that appellant did other than report the problem when she discovered it.

█ Because this problem is caused, in part, by the practice of introducing witnesses to prospective jurors by name only, it may be advisable for counsel, when feasible, to produce witnesses, especially lay witnesses, for visual introduction. Since in this instance the juror unintentionally failed to answer a critical question posed on voir

---

**3.** Annot., 63 A.L.R.2d 1064 (1959); Later Case Service, 63 A.L.R.2d 199 (1980).

**4.** Annot., 63 A.L.R.2d 1063-64 (1959).

**5.** *Id.* at 1064 65; 58 Am.Jur.2d, *New Trial* § 48 (1971 & Supp.1980).

dire, the trial court should have granted a new trial upon discovery of the facts adduced. Accordingly, we reverse and remand for a new trial.

*So ordered.*