**SHANNON & LUCHS MANAGEMENT COMPANY, INC., Appellant,**

v.

**Patricia L. ROBERTS, Appellee.**

**No. 80–425.**

District of Columbia Court of Appeals.

Argued Sept. 23, 1981.*

Decided June 22, 1982.

---

* By direction of the court, supplemental memoranda were filed by the parties on February 24, 1982.

David P. Durbin, Washington, D. C., with whom Dwight D. Murray, Washington, D. C., was on the briefs, for appellant.

James B. Goding, Washington, D. C., for appellee.

Before KELLY, KERN and FERREN, Associate Judges.

KERN, Associate Judge:

Appellant Shannon and Luchs Management, appeals from a jury verdict awarding appellee $90,000 for injuries sustained after she fell on a stairway outside of her apartment, which was managed by appellant. Following the denial of its post-trial motions for a mistrial and for a new trial or judgment notwithstanding the verdict, appellant now raises three arguments on appeal, only two of which we need address.

Appellant first claims that it was denied a fair trial by an impartial and unbiased jury, since one of the jurors unintentionally failed to respond to the court's question during the voir dire concerning whether she knew appellee, and the post-trial hearing established that this juror had subsequently recognized appellee during the first day of the two-day trial. In addition, appellant asserts that the trial court's 26-month delay in ruling upon post-trial motions mandates

a new trial.[1] Regarding appellant's first claim, and relying upon the United States Supreme Court's recent opinion in *Smith v. Phillips*, —— U.S. ——, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), we conclude that appellant was not denied a fair trial as guaranteed by the Seventh Amendment of the Constitution, since the post-trial hearing on this issue sufficiently established that this juror was "capable and willing to decide the case solely on the evidence before [her]." *Id.* at ——, 102 S.Ct. at 946. Further, we conclude that appellant was not prejudiced by the trial court's delay in ruling upon its post-trial motions, and that such a delay, by itself, does not require reversal for a new trial. We, of course, do not condone a delay of more than two years in ruling upon a post-trial motion.

## I

This case came before the Superior Court for trial by a jury of six on December 1, 1977. Among the questions posed by the trial court during voir dire was the following:

> Next, I would ask Mrs. Patricia Roberts [the appellee] to rise and face the members of the jury panel and ask if any of you know her. [Supp. Record III at 18.]

One member of the jury venire responded that she recognized appellee from "where we used to live" but indicated that she could be a fair and impartial juror. This potential juror was successfully challenged for cause although her recollection of appellee was somewhat vague, because the trial court was not sure whether "further recollections might be prompted in the course of the trial." (Supp. Record II at 30–31.) Appellant exercised only two of its three available peremptory challenges, and subsequently, the full jury was empanelled. Af-

ter a two day trial, the jury was instructed on Friday, December 2.

On December 3, appellee called her counsel claiming that "she had not slept all Friday night" because she realized that she had just recognized one of the jurors. Appellee's counsel notified counsel for appellant, and together they agreed that the court should be informed of the development on the following Monday, December 5.

In court on December 5, appellee's counsel described his client's recognition of one of the jurors. He explained that she had failed to notify him earlier, since she was not sure if she knew this lady or "whether this lady knew her."[2] According to her counsel, appellee realized that this juror did, in fact, recognize her as time went on, although the basis for this statement was not established at the subsequent hearing. Appellant's counsel moved for a mistrial. However, the trial court decided that the jurors should be allowed to continue their deliberations and that a post-verdict hearing would be held to determine "whether there have been any circumstances that might improperly influence the jury."

The jury returned a verdict for $90,000 damages in appellee's favor. After the jury was polled, appellant's counsel again moved for a mistrial on the basis of the failure of the juror, who had been foreman, to acknowledge her acquaintance with appellee during the pretrial voir dire. The juror in question was recalled to the courtroom, and a hearing was held by the court to determine the extent of this juror's recognition and knowledge of appellee.

At this hearing, the juror admitted that she had been hospitalized at St. Elizabeths about three years earlier, and testified that "she had seen (appellee) but didn't know her." When asked why she failed to re-

---

1. In addition to these two claims, appellant raises challenges to the admissibility of the appellee's expert testimony. We find that the trial court properly admitted appellee's expert testimony, since he testified as to his opinion in terms of a "reasonable medical certainty." *Sponaugle v. Pre-Term, Inc.*, D.C.App., 411 A.2d 366 (1980).

2. This juror had been previously hospitalized for five months at St. Elizabeths, where appellee worked as a clerk-typist. Apparently, appellee's concern about the policy precluding an employee's disclosure of the identity of any patients or events at St. Elizabeths was the basis for her reluctance to inform counsel of her recognition of this juror during the course of trial.

spond to the court's question on voir dire, she stated that she did not recognize appellee at that time, but only identified her after one of appellee's witnesses, a nurse at the hospital, had testified during the trial.[3] The record reflects that this witness testified on the afternoon of the first day of trial.

Additional testimony by the juror at the hearing revealed that she had been hospitalized for about five months and had been on the same floor and in the same ward as that in which appellee worked. Finally, without objection, the juror testified in answer to questions that she was *not* influenced by the fact that she had been in the same hospital where appellee was employed. After the hearing ended, the court asked for the submission of post-trial legal memoranda.

On March 20, 1980, approximately 26 months after the motions were filed (Dec. 16, 1977), the trial court entered a Memorandum Opinion and Order denying appellant's motion for mistrial. The trial court's reasons were that the juror "did not intentionally or purposefully fail to disclose material facts during voir dire examination;" the juror's recognition of appellee during trial "did not either influence that juror or taint the jury deliberations;" and, *citing Daniels v. United States,* 123 U.S.App.D.C. 127, 131, 357 F.2d 587, 591 (1966) (Bazelon, C. J., dissenting), although appellant might have "used its third peremptory challenge if that information [juror was hospitalized where appellee worked] had been known, the Court, in the exercise of its discretion, concludes . . . [a] new trial is not justified." (Record at 179–80.)

In *Smith v. Phillips, supra,* the Supreme Court established that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id.* —— U.S. at ——, 102 S.Ct. at 946. There, a juror sitting in a criminal trial had submitted during trial an application for employment as an investigator in the District Attorney's Office. The prosecuting attorneys, although aware of the juror's application, withheld this information from the trial court and the defendant's counsel until after the trial. At a post-trial hearing on defendant's motion to vacate his conviction, before the same judge who had presided at trial, the motion was denied. The trial judge concluded "beyond a reasonable doubt" that events giving rise to the motion did not influence the verdict.

After defendant exhausted his state court appeals, he sought habeas corpus relief in the federal district court. The district court found insufficient evidence to demonstrate that the juror had been actually biased. *Phillips v. Smith,* 485 F.Supp. 1365, 1371 (S.D.N.Y.1980). However, the court *imputed* bias to the juror because "the average man in Smith's position would believe that the verdict of the jury would directly affect the evaluation of his application." *Id.* at 1371–72. The federal district court ordered the defendant released unless the State granted him a new trial within 90 days.

The United States Court of Appeals for the Second Circuit affirmed, stating that "it is at best difficult and perhaps impossible to learn from a juror's own testimony after the verdict whether he was in fact 'impartial'." However, the court of appeals did not consider whether the juror was actually or impliedly biased. *Phillips v. Smith,* 632 F.2d 1019, 1022 (2d Cir. 1980). The Supreme Court noted that the court of appeals

---

**3.** The trial court also had questioned the potential jurors during voir dire as to whether any of them knew this nurse, a Ms. Beatrice Gardner. The nurse was not present at voir dire, but she was mentioned by name and was identified as part of the supervisory staff of St. Elizabeths Hospital. While the juror now the subject of the motion did not recognize Ms. Gardner at voir dire by name, another of the potential jurors stated that the "name Gardner, [was] familiar to some extent." This venireman men-

tioned that her sister had just been released from St. Elizabeths, and admitted that she thought she had talked to Ms. Gardner concerning her sister, but she felt that she could sit as an impartial juror. (Supp. Record III at 21–22.) We note that appellant did *not* challenge this venireman for cause and did *not* exercise a peremptory challenge to strike this juror, although appellant had one peremptory challenge left at the close of jury selection.

affirmed the defendant's release "simply because 'the failure of the prosecutors to disclose their knowledge denied [respondent] due process'." *Smith v. Phillips, supra* —— U.S. at ——, 102 S.Ct. at 944.

In addressing respondent Smith's claims, the Supreme Court stated:

> In argument before this Court, respondent has relied primarily on reasoning adopted by the District Court (footnote omitted). He contends that a court cannot possibly ascertain the impartiality of a juror by relying solely upon the testimony of the juror in question. Given the human propensity for self-justification, respondent argues, the law must impute bias to jurors in Smith's position. We disagree.

The court went on to hold that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at ——, 102 S.Ct. at 945; *relying upon Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950); and *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981).

Appellant here has attempted to avoid the rationale of *Smith* by stressing the nature of the relief sought by respondent in that case, *i.e.*, habeas corpus. However, we are convinced that *Smith* is applicable to situations of claimed juror bias that are only discovered after trial and that may be investigated at a post-trial hearing. The Court in *Smith* was expressly addressing more than habeas corpus actions or situations in which juror partiality may develop only *during* trial in reaching its holding

that a post-trial hearing to discover the extent of actual juror prejudice will satisfy due process guarantees.[4]

The safeguards of juror impartiality such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due Process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case. [*Id.* at ——, 102 S.Ct. at 946 (footnote omitted).]

Finally, regarding the ability of a court to determine juror partiality through a post-trial hearing, the Court rejected the reasoning of the District Court and the Court of Appeals that the *federal* court remedy was constitutionally insufficient in a state court under the Due Process Clause of the Fourteenth Amendment.

> It seems to us to follow "as the night the day" that if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror impartiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system. [*Id.* at ——, 102 S.Ct. at 946 (footnote omitted).]

This specific holding, of course, is applicable to the District of Columbia through the Due Process Clause of the Fifth Amendment. *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974); *Bolling v.*

---

4. Appellant contends that "*Smith* did not involve facts at all comparable to those presented here," as: "the 'juror misconduct' in *Smith* could not have been discovered during the extensive trial voir dire since the objectionable occurrence transpired during trial" and that, here, the "relationship between [the juror] and the appellee and her witness preceded the trial and was not disclosed either prior to or during trial." (Appellant's Supplemental Memorandum at 5.) However, these contentions reinforce our decision to apply *Smith* to the instant case. Here, the juror only recognized appellee during the trial after she had recognized nurse Gardner, also during the trial. As in *Smith*, the extensive voir dire in this case could not have revealed the juror's prior contact with appellee, since the event triggering her recognition took place during trial. We also note that in *Smith*, the juror and the prosecuting attorneys were aware of the "misconduct" and failed at any time to notify the court of the juror's application for employment to the District Attorney's Office. In contrast, the attorneys here promptly notified the court of the juror-recognition event.

*Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)

We recognize that there are two guiding precedents in the District of Columbia: *Marvins Credit, Inc. v. Steward*, D.C.Mun. App., 133 A.2d 473 (1957), and *Cowden v. Washington Metropolitan Area Transit Authority*, D.C.App., 423 A.2d 936 (1980). In *Marvins Credit*, the juror had remained silent instead of answering affirmatively when asked during voir dire whether any potential juror had suffered a judgment in favor of the plaintiff store and had been the subject of garnishment proceedings. There we said:

> We think that the rule to govern such situations may be summarized as follows: Full knowledge of all relevant and material matters that might bear on possible disqualification of a juror is essential to a fair and intelligent exercise of the right of counsel *to challenge either for cause or peremptorily.* It is the duty of a juror to make full and truthful answers to such questions as are asked, *neither falsely stating any fact nor concealing any material matter.* If a juror falsely represents his interest or situation or conceals a material fact relevant to the controversy and such matters, if truthfully answered, might establish prejudice or work a disqualification of the juror, the party misled or deceived thereby, *upon discovering the fact of the juror's incompetency or disqualification after trial,* may assert that fact as a ground for and obtain a new trial, upon a proper showing of such facts, even though the bias or prejudice is not shown to have caused an unjust verdict, it being sufficient that a party, *through no fault of his own,* has been deprived of his constitutional guarantee of a trial of his case before a fair and impartial jury. [*Id.* at 476 (emphasis in original; footnote omitted).]

In *Marvins Credit*, we were describing a situation in which the undiscovered fact, if revealed during voir dire as it could have been, would have had the effect of establishing juror incompetency or disqualification at that time. The statement by the court that "[i]t is the duty of a juror to make *full and truthful* answers to such questions as are asked, neither *falsely* stating any fact nor *concealing* any material matter" indicates that it may be significant whether the juror honestly answered the questions on voir dire or purposely concealed the material facts. *See United States v. Brooks*, (No. 80–1621, April 20, 1982, slip op. at 4). We note that the nature of this nondisclosure could be determined through questioning the challenged juror in a post-trial hearing. In *Marvins Credit*, an admittedly incompetent juror had been allowed to participate in a trial only because that juror had failed to fully and truthfully answer a question during voir dire. Upon showing the existence of bias or prejudice, as was the case in *Marvins Credit*, the party seeking a new trial need not show that such prejudice *caused* an unjust verdict.

In *Cowden*, the juror had failed to indicate on voir dire that she had worked in the same agency at the same location, although in different offices, with the plaintiff's mother, despite the fact that the mother had been named during voir dire and then testified as a witness at the trial. This juror described her working relationship with the plaintiff's mother as "friendly." *Id.* at 937 n.2. In *Cowden*, we held that appellant was entitled to a new trial in light of the "critical concern" before the court: "the right of counsel to seek fair and impartial jurors on the basis of information received during voir dire." *Id.* at 938. However we went on to state that:

> The underlying rationale of our approach—to grant relief without a showing of prejudice—is a recognition of the fact that it is difficult to identify and measure bias or prejudice. [*Id.*]

This language presumes the existence of bias or prejudice where a potential witness has failed, unintentionally or not, to answer a "critical question" on voir dire.

However, in *Cowden*, the court did not explicitly rule out the availability of a post-trial hearing to determine the extent of juror prejudice. In this regard, the court

stated that "the *decisive* question in this matter is whether appellant discovered the juror's infirmity before the verdict." *Id.* at 938.

Here the trial judge conducted two post-trial hearings. Although he expressed skepticism that a witness could testify and observe the entire trial and not recognize the juror until after the verdict, *he made no finding as to when appellant, as contrasted to her mother, discovered the circumstances.* There is no finding that appellant did other than report the problem when she discovered it. [*Id.* (emphasis added).]

■ By this language we clearly established the propriety of a post-trial hearing to determine *when* the recognition between the juror and the party occurred. Similarly, we conclude that the court may discern the materiality of the undisclosed information (is it critical) as well as the truthfulness of the juror's responses to questions asked on voir dire during a post-trial hearing. The trial court must be able to examine *all* the circumstances surrounding a juror's nondisclosure during voir dire, since both *Marvins Credit* and *Cowden* were ultimately concerned with a party's constitutional right to a trial by a fair and impartial jury.

This reading of our prior decisions is not inconsistent with *Smith v. Phillips* as well as other past decisions of the United States Court of Appeals for the District of Columbia Circuit that the determination of juror bias or prejudice through a post-trial hearing is particularly within the discretion of the trial court, and will only be reversed on appeal for a clear abuse of discretion. *Daniels v. United States, supra* 123 U.S.App. D.C. at 131, 357 F.2d at 591; *Carpenter v. United States,* 69 App.D.C. 306, 307, 100

F.2d 716, 717 (1938); *cf. In re United States,* 194 U.S.App.D.C. 314, 318 n. 7, 598 F.2d 233, 237 n. 7 (1979) (recognizing "abuse of discretion" standard in discussion of court's decision to grant new trial where juror *intentionally* failed to disclose critical information). In our view, *Cowden* was never intended to so severely limit the trial court's scope of examination during a post-trial determination of juror impartiality, since such a broad reading would conflict with the overwhelming majority of existing precedent. *See Smith v. Phillips, supra,* and cases discussed therein.[5]

■ Addressing the constitutional sufficiency of the post-trial hearing in this case, we conclude that the trial court did not abuse its discretion in concluding that the juror's "recognition of the plaintiff at a later time in the proceedings did not either influence that juror or taint the jury deliberations." (Record at 179.) We note that this finding is similar to that made by the trial court in *Smith* and ultimately upheld by the Supreme Court.[6]

■ We further conclude that the trial court did not abuse its discretion in finding that a new trial was not warranted although a proper disclosure of the juror's recognition on voir dire "might have caused the [appellant] to use its third peremptory challenge." It is clear that where the non-disclosure is innocent or inadvertent, as here, "the trial court has some discretion in deciding whether to order a new trial." *Daniels v. United States, supra* 123 U.S. App.D.C. at 131, 357 F.2d at 591; *accord, United States v. Currie,* 609 F.2d 1193 (6th Cir. 1979); *United States v. Vargas,* 606 F.2d 341 (1st Cir. 1979); *United States v. Moss,* 591 F.2d 428 (8th Cir. 1979); and *United States v. Mulligan,* 573 F.2d 775 (2d

5. To the extent that *Marvins Credit* and *Cowden* fail to discuss generally the proper scope of a trial court's examination into the factors surrounding a juror's failure to disclose information during voir dire, those cases are distinguishable from *Smith v. Phillips* as well as the situation presently before the court.

6. In *People v. Phillips,* 87 Misc.2d 613, 384 N.Y.S.2d 906 (1975), the trial court held that

"from the evidence adduced" at the hearing, *id.* at 621, 384 N.Y.S.2d at 912, the juror's application "was indeed an indiscretion" but that it "in no way reflected a premature conclusion as to [defendant's] guilt, or prejudice against the [defendant,] or an inability to consider the guilt or innocence of the [defendant] solely on the evidence." *Id.* at 627, 384 N.Y.S.2d at 915.

Cir. 1978), *cert. denied*, 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1979). In this instance, the trial court properly exercised that discretion after a consideration of both the reasons for the juror's failure to disclose and of the materiality of the undisclosed information. (Record at 180 n.3.)

The reasons for nondisclosure appear innocent in the instant case: the juror at voir dire did not recognize appellee, a clerk typist who worked at St. Elizabeths where the juror had been hospitalized more than two years earlier. Further, in determining the materiality of the nondisclosure, the trial court must determine (1) whether it would have excused the juror out of an abundance of caution had the information been revealed on voir dire, and (2) whether, in the court's opinion, this disclosure of the information would have resulted in a peremptory challenge to the juror.

In this case, the trial court dismissed for cause a venireman who had recognized appellee from "her old neighborhood." The trial court presumably took such action because it was not sure whether this relationship would result in further recollections during the trial. However, comparing the nature of an acquaintance in a neighborhood situation to that where a patient in a hospital has seen one of the hospital employees on the floor but had never spoken with her, we conclude that the trial court would not have dismissed the juror for cause had these facts been disclosed on voir

dire. *See, e.g., Ryan v. United States*, 89 U.S.App.D.C. 328, 331–32; 191 F.2d 779, 782–83 (1951); *Carpenter v. United States, supra; Consolidated Gas and Equip. Co. v. Carver*, 257 F.2d 111, 115–16 (10th Cir. 1958).

In determining whether disclosure of the information would have resulted in a peremptory challenge to the juror, we find it most significant that appellant failed to exercise its third peremptory challenge to a venireman who, during voir dire in this case, admitted knowledge of the witness, Ms. Gardner, the very same staff nurse whose appearance on the stand triggered this juror's recognition of appellee during trial. We conclude that appellant would not have exercised its third and remaining peremptory challenge if this juror's recognition of nurse Gardner or appellee had been disclosed during voir dire. This is so especially because appellant apparently believed that recognition of a hospital staff member was not a relationship significant enough to warrant the exercise of a peremptory challenge in the case of the other venireman.[7] In sum, nondisclosure would not have been material to voir dire.

■ Finally, appellant claims that the effect of the nondisclosure was to deny it the basic right to exercise its third peremptory challenge. While peremptory challenges are important to both civil and criminal proceedings, *Carr v. Watts*, 597 F.2d 830

---

**7.** In its supplemental memorandum, appellant urged that this court adopt the test developed in *McCoy v. Goldston*, 652 F.2d 654 (6th Cir. 1981), to determine whether a new trial is necessary because a juror has failed to disclose information during voir dire. However, in *McCoy*, the circuit court held that "*a showing of juror bias is the touchstone to determine whether to grant a new trial.*" *Id.* at 659 (citation omitted). The court also cited *United States v. Wood*, 299 U.S. 123, 133, 57 S.Ct. 177, 179, 81 L.Ed. 78 (1936), in that: "The bias of a prospective juror may be actual or implied, that is, *it may be bias in fact or bias conclusively presumed as a matter of law.*" (Emphasis added.) Clearly, this does not advance appellant's claim here.

Finally, relying upon *Daniels v. United States, supra*, the court in *McCoy* held that "a new trial must be granted where the undis-

closed information would have resulted in the juror's disqualification for cause. This occurs when either the juror admits a feeling of partiality or 'the judge makes a pragmatic judgment that there is a *substantial possibility* of the juror unconsciously favoring one side or another'." (Emphasis added.) An examination of the quoted material from *Daniels* reveals that the decision of the trial court to strike for cause is subject to review under an abuse of discretion standard: "[T]he rule is that a new trial must be granted where the undisclosed facts are such that, had they been known, a failure to dismiss the juror for cause would have been an abuse of discretion requiring a new trial." *Daniels, supra* 123 U.S.App.D.C. at 131 n.4, 357 F.2d at 591 n.4. This is exactly the standard we have adopted above, and we have concluded that the trial court did not abuse its discretion in these circumstances.

(2d Cir. 1979), they have not, as of yet, "acquired a constitutional footing." *United States v. Vargas, supra* at 346. We recognize that if the court or prosecutor specifically deprives a defendant of peremptory challenges, this is grounds for a new trial without a showing of prejudice. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Harrison v. United States*, 163 U.S. 140, 16 S.Ct. 961, 41 L.Ed. 104 (1896). But this is not a situation where a court has directly or indirectly prevented the exercise of a peremptory challenge. *See Carr v. Watts, supra; United States v. Turner*, 558 F.2d 535 (9th Cir. 1977); *United States v. Rucker*, 557 F.2d 1046 (4th Cir. 1977); *United States v. Mackey*, 345 F.2d 499 (7th Cir.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69 (1965). Appellant has not claimed that either the court or appellee knew or should have known of the juror's prior hospitalization in St. Elizabeths. We recognize that, if the juror had answered the questions fully, she would have been subjected to more intensive interrogation and the extent of her recognition would have been disclosed. However, as the United States Court of Appeals for the First Circuit stated in *United States v. Vargas, supra* :

> We do not treat lightly the concealment of information by a prospective juror, but the jury system, despite its vital role in our jurisprudence, is not perfect. It is based on the assumption that a person's guilt or innocence can best be determined by twelve persons representing a fair cross section of the community. We try to eliminate bias or prejudice by juror questionnaires and voir dire examination. There is no way, however, of absolutely insuring that a prospective juror will answer honestly the questions put to him. The secrecy within which juror's deliberations are necessarily cloaked prevents us, in most cases, from ever finding out the reasons and motivations for a verdict. [*Id.* at 346.]

■ This result is consistent with the due process analysis in *Smith v. Phillips, supra* —— U.S. at ——, 102 S.Ct. at 946; that "voir dire . . . [is] not infallible; it is virtu-ally impossible to shield jurors from every contact or influence that might theoretically affect their vote," and that due process is guaranteed if a jury is capable and willing to decide a case solely on the evidence before it. *See also United States v. Brooks, supra*, slip op. at 6 n.3. Thus, where an individual has honestly and unintentionally failed to accurately respond to all questions on voir dire, the only recourse is to try to determine, as was done here by the trial court, whether there was a showing of bias or prejudice as to require a new trial. *Smith v. Phillips, supra; Marvins Credit, supra* at 476 ("upon a proper showing of such facts" of bias or prejudice); *United States v. Vargas, supra; Turner v. United States*, 135 U.S.App.D.C. 59, 61, 416 F.2d 815, 817 (1969). We are satisfied that there was no error in the instant case by the trial court in denying appellant's post-verdict motion.

## II

Addressing appellant's second claim, appellant contends that the trial court's 26-month delay in ruling upon its post-trial motions mandates a new trial. In this case, appellant filed post-trial motions seeking a mistrial, judgment notwithstanding the verdict, or new trial or remittitur on December 16, 1977. On March 20, 1980, the trial judge entered her order denying appellant's motion for mistrial. On March 24, 1980, the trial court denied appellant's motion for judgment *n. o. v.* or a new trial. Appellant now urges that its post-trial rights were prejudiced by the trial court's delay in disposing of these motions.

In *Town Center Management Corp. v. Chavez*, D.C.App., 373 A.2d 238, 242 (1977), we stated: "It seems beyond dispute that holding a case under advisement after trial for almost two and a half years constitutes an aberration of the judicial system." However, we went on to hold that reversal was not warranted, since "the extraordinary delay in deciding the case did not undermine the trial judge's ability to find the facts." *Id.* Applying the analysis in *Town Center* to the present case, and after exam-

ining the court's ruling contained in its memorandum opinions, we conclude the 26-month delay did not adversely affect the court's ability to rule upon appellant's post-trial motions since such opinions reflect a clear understanding of the issues and a concise and well-informed manner of disposing of them.

We note that in this case, judgment was entered for appellee in the amount of $90,000 on December 5, 1977. Appellant filed its post-trial motions on December 16, 1977. Subsequently, appellant *sua sponte* filed a supplemental memorandum in support of its motions for a mistrial or new trial in July 1979. Thus, appellant's first formal attempt to gain a ruling on its post-trial motions, while an indirect effort, occurred 19 months after its motions were originally filed. In *Town Center*, we cited appellant's "unbroken silence" during the post-trial period as a factor reducing the extent of the claimed prejudice to its post-trial rights. *Id.* at 242. The next direct action by either party was the filing of a Petition for a Writ of Mandamus by appellee on March 13, 1980, which also described various informal attempts by both parties to secure a ruling on these motions.[8] Just as in *Town Center*, the record here indicates that appellee had made greater efforts to resolve the case expeditiously than had appellant. Within two weeks of the filing of the mandamus petition, the trial court entered its ruling on appellant's post-trial motions. While we recognize appellant's desire to preserve its post-trial rights in this instance, we are aware that appellee, too, has been prejudiced by the delay due to her inability to reach the judgment proceeds.

In conclusion, we do not believe that the "sound administration of justice" requires reversal and remand for a new trial in 1982, over six years after the incident took place and the complaint was filed.

*Affirmed.*

8. Attached to appellee's petition for Writ of Mandamus was a letter from appellant's counsel to the trial judge dated November 5, 1979, expressing appellant's desire for a disposition

FERREN, Associate Judge, concurring:

Although I generally concur in the opinion of the court, I do not subscribe to the discussion, *ante* at 41–43, that would preserve distinctions between the Supreme Court's recent—and controlling—decision in *Smith v. Phillips*, —— U.S. ——, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), and this court's earlier decisions in *Cowden v. Washington Metropolitan Area Transit Authority*, D.C. App., 423 A.2d 936 (1980), and *Marvins Credit, Inc. v. Steward*, D.C.Mun.App., 133 A.2d 473 (1957).

While I do not disagree with the general proposition that *Cowden* and *Marvins Credit* may be useful precedents in contexts not now before us, I do not find persuasive the distinctions proffered here between those decisions (especially *Cowden*) and *Smith*. I therefore would prefer to withhold discussion of *Cowden* and *Marvins Credit* until we have a case where their residual value after *Smith* will be of actual use in resolving the matter.

of the case. The letter stated: "Although the anxiety of our concern may not match the intensity of Mrs. Roberts, we are concerned nevertheless."